# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP515-FT |
| COMPLETE TITLE: | State of Wisconsin, |
| |           Plaintiff-Appellant-Petitioner, |
| |    v. |
| | Daniel S. Iverson, |
| |           Defendant-Respondent. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 358 Wis. 2d 712, 856 N.W.2d 346)
(Ct. App. 2014 – Unpublished)

| | |
|---|---|
| OPINION FILED: | November 25, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 8, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | La Crosse |
|   JUDGE: | Ramona A. Gonzalez |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | ABRAHAMSON, J., concurs joined by A.W. BRADLEY, J.(¶¶64-66 ONLY). (Opinion Filed) |
| | A.W. BRADLEY, J., concurs. (Opinion Filed) |
|   DISSENTED: | |
|   NOT PARTICIPATING: | R.G. BRADLEY, J. did not participate. |

ATTORNEYS:

For the plaintiff-appellant-petitioner, the cause was argued by *Donald V. Latorraca,* assistant attorney general, with whom on the briefs was *Brad D. Schimel,* Attorney General.


For the defendant-respondent, there was a brief by *Joseph G. Veenstra* and *Johns, Flaherty & Collins, S.C.,* La Crosse, and oral argument by *Joseph G. Veenstra.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2014AP515-FT
(L.C. Nos. 2013TR4032 & 2013TR4033)

STATE OF WISCONSIN       :       IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Appellant-Petitioner,**

    **v.**

**Daniel S. Iverson,**

    **Defendant-Respondent.**

**FILED**

**NOV 25, 2015**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of an unpublished decision of the court of appeals, State v. Iverson, No. 2014AP515-FT, unpublished slip op. (Wis. Ct. App. Oct. 9, 2014), which affirmed the order of the La Crosse County circuit court[1] granting defendant Daniel S. Iverson's ("Iverson") motion to suppress evidence of drunk driving obtained by an officer of the state traffic patrol during a traffic stop of Iverson's vehicle.

---

[1] The Honorable Ramona A. Gonzalez presided.

¶2 Iverson asserts that the officer lacked authority to seize Iverson's vehicle to investigate the violation of a state statute prohibiting littering, Wis. Stat. § 287.81 (2011-12).[2] Iverson argues in the alternative that the officer lacked probable cause or reasonable suspicion that a violation of the littering statute had occurred.

¶3 The central issue before us in this case is whether the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution permit an officer of the state traffic patrol to stop a vehicle based solely on the officer's observation of the commission of a non-traffic civil forfeiture offense by an occupant of that vehicle.

¶4 We conclude that: (1) the Wisconsin Legislature has explicitly authorized state troopers to conduct traffic stops in order to investigate violations of Wis. Stat. § 287.81 and to arrest violators of the statute under specified conditions; (2) a traffic stop to enforce § 287.81 is generally reasonable if an officer has probable cause or reasonable suspicion that a violation of § 287.81 has occurred; (3) discarding a cigarette butt onto a highway violates § 287.81; and (4) based on his observations, the officer in this case had probable cause to believe that an occupant of Iverson's vehicle had violated § 287.81 by throwing a cigarette butt onto the highway.

---

[2] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

¶5   The defendant's motion to suppress evidence obtained during this traffic stop and to dismiss this case should have been denied. We reverse the decision of the court of appeals and remand the case to the circuit court for reinstatement of charges and further proceedings consistent with this opinion.

I.   FACTUAL BACKGROUND

¶6   On January 29, 2014, Wisconsin State Patrol Trooper Michael Larsen ("Trooper Larsen") testified at a hearing on Iverson's motion to suppress evidence. The following facts are taken from his testimony.

¶7   On September 18, 2013, at about 1:00 a.m., Trooper Larsen was traveling northbound on Rose Street in the City of La Crosse. He observed a silver jeep in front of him drift within its lane toward the centerline and back. The vehicle did not cross the centerline or strike the curb. The vehicle approached an intersection secured by a flashing yellow traffic light. Although there was no traffic at the intersection, the vehicle came to a complete stop at the light before continuing past the intersection. The vehicle then arrived at a second flashing yellow light. Again, despite a lack of traffic at the intersection, the vehicle stopped at the light before continuing north. Trooper Larsen testified that at this point in time he did not feel that he possessed the reasonable suspicion necessary to conduct a traffic stop.[3]

---

[3] We do not necessarily accept the officer's conclusion in this regard as our own. We need not address its soundness for purposes of analyzing the issues before the court.

3

¶8 Trooper Larsen then observed a cigarette butt "being thrown from the passenger side of the vehicle." The cigarette butt hit the ground and scattered ashes across the right lane of the road. After crossing an overpass, Trooper Larsen initiated a traffic stop of the vehicle. Trooper Larsen testified that the reason for the stop was the ejection of the cigarette butt from the vehicle he had been following. He relied upon Wis. Stat. § 287.81, entitled "Littering," which states in relevant part:

> [A] person who does any of the following may be required to forfeit not more than $500:
>
> (a) Deposits or discharges any solid waste on or along any highway, in any waters of the state, on the ice of any waters of the state or on any other public or private property.
>
> (b) Permits any solid waste to be thrown from a vehicle operated by the person.

Wis. Stat. § 287.81(2)(a)-(b). Trooper Larsen informed the driver of the vehicle, Iverson, that a cigarette butt had been thrown out of Iverson's vehicle. Iverson denied knowledge, but the passenger admitted responsibility and stated that he had not known that the action was illegal.

¶9 Trooper Larsen eventually cited Iverson for operation of a motor vehicle while under the influence of an intoxicant, in violation of Wis. Stat. § 346.63(1)(a), and operation of a

4

motor vehicle with a prohibited alcohol concentration, first offense, in violation of § 346.63(1)(b).[4]

## II. PROCEDURAL BACKGROUND

¶10 On October 17, 2013, Iverson pleaded not guilty to the violations alleged in the traffic citations he had received. On December 27, 2013, Iverson filed a motion to suppress any and all evidence obtained following the stop of his vehicle and to dismiss the case. At the January 9, 2014 hearing on the motion, the La Crosse County circuit court granted Iverson's motion. The court stated:

> [Trooper Larsen] wasn't stopping [Iverson] to cite him for the litter. He was stopping him to see if he was a drunk driver. . . . The litter is the excuse, and if that cigarette butt comes out of the driver's side, I'm with you, Trooper . . . but not out of the passenger side.

On January 14, 2014, the court entered an order granting the motion to suppress evidence and to dismiss the case. On February 26, 2014, the State filed a notice of appeal.

¶11 On October 9, 2014, the court of appeals affirmed the circuit court's order on different grounds. It found that "an articulable suspicion or probable cause of violation of a forfeiture that is not a violation of a traffic regulation is [not] sufficient justification for a warrantless seizure of a citizen." See State v. Iverson, No. 2014AP515-FT, unpublished slip op., ¶11 (Wis. Ct. App. Oct. 9, 2014).

---

[4] The facts upon which Trooper Larsen based the citations are not at issue in this case.

5

¶12 In reaching its conclusion, the court of appeals first examined Wis. Stat. § 968.24, which it properly characterized as a "legislative codification" of Terry v. Ohio, 392 U.S. 1 (1968). Iverson, No. 2014AP515-FT, unpublished slip op., ¶6; see State v. Post, 2007 WI 60, ¶11, 301 Wis. 2d 1, 733 N.W.2d 634. The statute authorizes law enforcement officers to conduct temporary questioning without arrest "when the officer reasonably suspects that such a person is committing, is about to commit or has committed a crime." Wis. Stat. § 968.24.

¶13 The court of appeals further noted that Wis. Stat. § 345.22 permits warrantless arrests for violations of traffic regulations. Iverson, No. 2014AP515-FT, unpublished slip op., ¶10. The court of appeals reviewed our decision in State v. Popke, 2009 WI 37, 317 Wis. 2d 118, 765 N.W.2d 569, where we held that "[e]ven if no probable cause exist[s], a police officer may still conduct a traffic stop when, under the totality of the circumstances, he or she has grounds to reasonably suspect that a crime or traffic violation has been or will be committed." Id., ¶8 (quoting State v. Popke, 2009 WI 37, ¶23, 317 Wis. 2d 118, 765 N.W.2d 569) (emphases added) (citation omitted).

¶14 Finally, the court of appeals quoted from one of its own decisions, State v. Krier, 165 Wis. 2d 673, 478 N.W.2d 63 (Ct. App. 1991), in which it had held that where an individual's conduct might constitute either a civil forfeiture or a crime, depending on the nature of the conduct and on whether the individual is a repeat offender, "[j]ust as there is no

6

prohibition for stopping [an individual] because the behavior may end up being innocent, there is also no prohibition for stopping because the behavior may end up constituting a mere forfeiture." Id., ¶12 (quoting State v. Krier, 165 Wis. 2d 673, 678, 478 N.W.2d 63 (Ct. App. 1991)).

¶15 The court of appeals reasoned that, because littering in violation of Wis. Stat. § 287.81 is not a crime or traffic violation,[5] neither Terry, nor Wis. Stat. § 968.24, nor Wis. Stat. § 345.22, nor Popke authorized Trooper Larsen's stop. Id., ¶¶8-10, 13. Additionally, the court of appeals read the language in Krier to imply that conduct potentially resulting only in a "mere forfeiture" does not warrant a traffic stop. The court therefore affirmed suppression of the evidence gathered by Trooper Larsen. Id., ¶¶12, 14.

¶16 On December 19, 2014, the State filed a petition for review in this court. On March 16, 2015, we granted the petition.

III. STANDARD OF REVIEW

¶17 "Our review of an order granting or denying a motion to suppress evidence presents a question of constitutional fact." State v. Robinson, 2010 WI 80, ¶22, 327 Wis. 2d 302, 786

---

[5] Compare Wis. Stat. § 287.81(2), (2m) (violation of littering statute punishable by forfeiture), with Wis. Stat. § 939.12 ("Conduct punishable only by a forfeiture is not a crime"), and Wis. Stat. § 345.20(1)(b) (defining "[t]raffic regulation" as "a provision of chs. 194 or 341 to 349 for which the penalty for violation is a forfeiture or an ordinance enacted in accordance with s. 349.06").

7

N.W.2d 463 (citation omitted). Similarly, "[w]hether there is probable cause or reasonable suspicion to stop a vehicle is a question of constitutional fact." Popke, 317 Wis. 2d 118, ¶10 (citations omitted).

¶18 "When presented with a question of constitutional fact, this court engages in a two-step inquiry. First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous. Second, we independently apply constitutional principles to those facts." Robinson, 327 Wis. 2d 302, ¶22 (citations omitted).

¶19 This case also requires us to interpret and apply Wis. Stat. § 287.81 and other relevant statutes. "Statutory interpretation and application present questions of law that we review de novo while benefiting from the analyses of the court of appeals and circuit court." 118th St. Kenosha, LLC v. DOT, 2014 WI 125, ¶19, 359 Wis. 2d 30, 856 N.W.2d 486 (citations and internal quotation marks omitted).

¶20 "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Milwaukee City Hous. Auth. v. Cobb, 2015 WI 27, ¶12, 361 Wis. 2d 359, 860 N.W.2d 267 (quoting State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110) (internal quotation marks

omitted). "The context and structure of a statute are also important to the meaning of a statute." <u>Noffke ex rel. Swenson v. Bakke</u>, 2009 WI 10, ¶11, 315 Wis. 2d 350, 760 N.W.2d 156 (citing <u>Kalal</u>, 271 Wis. 2d 633, ¶46).

### IV. ANALYSIS

¶21 Iverson's citation for drunk driving gives rise to the issues before the court because he contends that the stop was in violation of his constitutional rights. Specifically, Iverson argues that the citations cannot stand because Trooper Larsen was without legal authority to stop Iverson's vehicle based solely upon violation of the littering statute, a non-traffic civil forfeiture law. In addition, Iverson argues that the conduct upon which Trooper Larsen based the stop did not violate the littering statute. In other words, we must address whether Trooper Larsen was endowed with the legal authority to stop Iverson's vehicle after observing a cigarette butt being thrown onto a highway from the vehicle. Consequently, the focus of this opinion centers upon whether this conduct constitutes "littering" so as to justify this traffic stop and whether this traffic stop can be based upon violation of this non-traffic civil forfeiture law.

¶22 As it relates to the constitutional issues now before this court, Iverson does not contend that he otherwise has a viable defense to the drunk driving charges. Similarly, he does not assert that we should undertake a traditional totality of the circumstances test so to evaluate whether his driving on that particular evening would otherwise justify a traffic stop.

9

Indeed, if we were to analyze the totality of the circumstances of the stop at issue, we might not reach the question before the court, and that analysis would only serve to restate longstanding legal principles. See, e.g., Post, 301 Wis. 2d 1, ¶¶12-13; State v. Malone, 2004 WI 108, ¶¶21-24, 274 Wis. 2d 540, 683 N.W.2d 1. Thus, we neither accept nor reject the officer's stated belief that he was without reasonable suspicion to conduct a traffic stop before the alleged littering occurred.

¶23 Our method of inquiry is shaped by a few important considerations. First, Trooper Larsen, an officer of the state traffic patrol, stopped Iverson's vehicle in order to enforce Wis. Stat. § 287.81. Second, Wis. Stat. § 110.07 delineates the powers and duties of officers of the state traffic patrol. And third, the automobile stop at issue must not be constitutionally unreasonable under the circumstances. See Popke, 317 Wis. 2d 118, ¶11 (citation omitted).

¶24 Therefore, in order to determine the lawfulness of Trooper Larsen's traffic stop, we analyze two statutory questions and two constitutional questions: (1) whether throwing a cigarette butt onto a highway constitutes a violation of Wis. Stat. § 287.81; (2) whether Trooper Larsen possesses authority under Wis. Stat. § 110.07 to conduct warrantless traffic stops as a means of enforcing § 287.81; (3) whether a state traffic patrol officer may conduct a warrantless traffic stop based on probable cause or reasonable suspicion that a violation of a non-traffic civil forfeiture law has occurred; and (4) whether

Trooper Larsen possessed probable cause or reasonable suspicion that a violation of § 287.81 had occurred.

### A.   Statutory Authority to Conduct the Traffic Stop

#### 1.   Whether Throwing a Cigarette Butt onto a Highway Violates Wis. Stat. § 287.81

¶25  Iverson argues that throwing a cigarette butt onto a highway does not violate Wis. Stat. § 287.81.  Although the statute prohibits the depositing or discharge of "solid waste" onto a highway, Iverson claims that a cigarette butt is not "solid waste" under the statute.  We disagree.

¶26  Wisconsin Stat. § 287.81 states in relevant part: "[A] person who does any of the following may be required to forfeit not more than $500:  (a) Deposits or discharges any solid waste on or along any highway . . . ."[6]  Wis. Stat. § 287.81(2)–(2)(a).

¶27  The definitional provision of the chapter within which Wis. Stat. § 287.81 falls defines "solid waste" as having "the meaning given in s. 289.01(33)."   Wis.  Stat.  § 287.01(10). Wisconsin Stat. § 289.01(33) reads:

> "Solid waste" means any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant or air pollution control facility and <u>other discarded or salvageable materials</u>, including solid, liquid, semisolid, or contained gaseous materials

---

[6] "Highway" is defined in the statute as having "the meaning given in s. 340.01(22)."  Wis. Stat. § 287.81(1)(am).  Wisconsin Stat. § 340.01(22) in turn states in relevant part: "'Highway' means all public ways and thoroughfares and bridges on the same. It includes the entire width between the boundary lines of every way open to the use of the public as a matter of right for the purposes of vehicular travel."  Wis. Stat. § 340.01(22).

11

resulting from industrial, commercial, mining and agricultural operations, and from community activities, but does not include solids or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges which are point sources subject to permits under ch. 283, or source material, as defined in s. 254.31(10), special nuclear material, as defined in s. 254.31(11), or by-product material, as defined in s. 254.31(1).

Wis. Stat. § 289.01(33) (emphasis added). "Garbage" and "refuse" each also possess unique definitions. Garbage "means discarded materials resulting from the handling, processing, storage and consumption of food." § 289.01(9). Refuse "means all matters produced from industrial or community life, subject to decomposition, not defined as sewage." § 289.01(28).

¶28 One could easily spend all day exploring Wis. Stat. § 289.01(33)'s various nooks and crannies, but we need not stop to ponder whether cigarette butts are "subject to decomposition," § 289.01(28), or "result[] . . . from community activities," Wis. Stat. § 289.01(33), because cigarette butts manifestly constitute "other discarded . . . materials."

¶29 "Judicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute. We assume that the legislature's intent is expressed in the statutory language." Kalal, 271 Wis. 2d 633, ¶44. And "[i]f the meaning of the statute is plain, we ordinarily stop the inquiry. Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional

12

meaning." Id., ¶45 (citations and internal quotation marks omitted).

¶30 To "discard" means "to drop, dismiss, let go, or get rid of as no longer useful, valuable, or pleasurable." Webster's Third New International Dictionary 644 (1961).[7] Cigarette butts are perhaps a paradigmatic example of "discarded" materials under this definition, as they are the abandoned remains of cigarettes, items that were once (at least to their users) useful, valuable, and pleasurable.

¶31 "Material," the singular of "materials," id. at 1392, is a broad and indefinite word. One sense of the word, and the sense that we find most plausible here, is "the whole or a notable part of the elements or constituents or substance of something physical . . . ." Id. Viewed in isolation, this definition clearly supports inclusion of cigarette butts within the phrase "discarded . . . materials." Nevertheless, a nebulous term like "materials" draws meaning from its context, so we further analyze the passage to confirm the word's import.

¶32 Iverson points to the list introduced by the phrase "other discarded . . . materials, including" and asserts that cigarette butts do not fall within any of the ensuing enumerated items. But even if a cigarette butt did not constitute "solid . . . materials resulting from industrial, commercial,

---

[7] This is the second sense of the word provided in the entry in Webster's. The first sense pertains to playing cards. See Webster's Third New International Dictionary 644 (1961).

13

mining and agricultural operations, and from community activities"——a proposition we find doubtful given consideration of the manufacture, sale, and use of cigarettes——the "including" clause does not exhaust the possible applications of "other discarded . . . materials." See, e.g., Liebovich v. Minnesota Ins. Co., 2008 WI 75, ¶26, 310 Wis. 2d 751, 751 N.W.2d 764 ("The presence of a comma and the word 'including' in [the phrase] indicates that the word 'including' is not meant to reference an exhaustive list."); Federal Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95, 100 (1941) ("[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle.").

¶33 The longstanding canon of construction "ejusdem generis" supports our analysis. This canon "instructs that when general words follow specific words in the statutory text, the general words should be construed in light of the specific words listed." State v. Quintana, 2008 WI 33, ¶27, 308 Wis. 2d 615, 748 N.W.2d 447 (citation omitted). The specific words "garbage," "refuse," and "sludge from a waste treatment plant, water supply treatment plant or air pollution control facility" do not so limit the more general phrase "other discarded . . . materials" that cigarette butts are of necessity excluded. In fact, these specific terms clarify that the definition encompasses more conventional items like cigarette butts.

¶34 The definition of garbage, for example ("discarded materials resulting from the handling, processing, storage and

14

consumption of food," Wis. Stat. § 289.01(9)), suggests inclusion of objects such as fast food wrappers and paper napkins. The definition of refuse ("all matters produced from industrial or community life, subject to decomposition, not defined as sewage," § 289.01(28)) apparently contemplates objects of both a specialized nature ("industrial" refuse) and of a more ordinary nature ("community life" refuse); into this latter category might fall objects such as newspapers and food waste, items likely found in vehicles throughout the state. The final term, "sludge," indicates materials of a specialized nature. The statute's specific enumerations thus run the gamut from ordinary to specialized waste; they do not provide reason to omit cigarette butts from the broad category of "discarded materials."[8]

¶35 The most natural reading of "other . . . discarded materials" affords the definition of "solid waste" a broad sweep, but it is not within our province to artificially limit the obvious reach of a statute without adequate reason. "It is

---

[8] Wisconsin Stat. § 287.05 establishes "policies of the state concerning the reduction of the amount of solid waste generated, the reuse, recycling and composting of solid waste and resource recovery from solid waste." The first policy listed states "[t]hat maximum solid waste reduction, reuse, recycling, composting and resource recovery is in the best interest of the state in order to protect public health, to protect the quality of the natural environment and to conserve resources and energy." Wis. Stat. § 287.05(1) (emphasis added). Though the provision is not helpful in determining the meaning of "solid waste," we note that inclusion of cigarette butts within that definition serves these purposes.

the court's role, in the context of statutory interpretation, to give effect to legislation unless we find that the legislature could not have intended the absurd or unreasonable results a statute appears to require."  Johnson v. Masters, 2013 WI 43, ¶20 n.12, 347 Wis. 2d 238, 830 N.W.2d 647.  It is hardly absurd for a statute entitled "Littering" to prohibit disposal of cigarette butts onto the state's roads.[9]  Therefore, we will simply give effect to the statute's natural meaning.

¶36 At the circuit court, Iverson's attorney submitted an affidavit that stated in part:

> I have never in my legal experience had a call from or represented someone who was cited for littering or any other offense due to the throwing of a cigarette butt.  In fact, I have witnessed hundreds of cigarette butts on the grounds outside our office, along the streets near our office and outside of taverns and other businesses located in downtown La Crosse and have never heard of anyone being cited for such disposal of cigarette butts.

If the image of masses of cigarette butts strewn throughout the streets of a Wisconsin city is meant to suggest that the

---

[9] In fact, cigarette butt litter is a widely recognized problem.  See, e.g., Leslie Kaufman, Cigarette Butts: Tiny Trash That Piles Up, N.Y. Times (May 28, 2009), http://www.nytimes.com/2009/05/29/us/29cigarettes.html?_r=0; Brian Clark Howard, Watch: Cigarette Butts, World's #1 Litter, Recycled as Park Benches, Nat'l Geographic (May 5, 2015), http://news.nationalgeographic.com/2015/05/150504-cigarette-butt-litter-recycling-environment/.  Cigarette butt litter pollutes waterways, costs millions of dollars in clean-up costs, and spoils the appearance of otherwise attractive surroundings.  See Kaufman, supra.  "Cigarette butts are, by some counts, the world's number one litter problem."  Howard, supra.

disposal of cigarette butts along highways is somehow a de minimis offense under Wis. Stat. § 287.81, it fails to persuade. The cumulative effect of improper waste disposal is a demonstrable example of why littering is problematic. The statement from the affidavit merely highlights the ills that the statute seeks to rectify by its plain terms.

¶37 In any event, the structure of the statute demonstrates that the legislature could easily have created a quantitative threshold for the littering offense but did not. Wisconsin Stat. § 287.81(2m) imposes a larger forfeiture of $1,000 on "a person who deposits any large item on or along any highway . . . ." Wis. Stat. § 287.81(2m). "Large item" is defined in the statute as "an appliance, an item of furniture, a tire, a vehicle, a boat, an aircraft, building materials, or demolition waste." § 287.81(1)(as). The legislature thus considered quantity terms but did not set an amount necessary to trigger the statute, something the legislature has proven itself capable of doing in other contexts. See, e.g., Wis. Stat. §§ 348.15-348.16 (setting pound-specific vehicle weight limitations).

¶38 We conclude that discarding a cigarette butt onto a highway violates Wis. Stat. § 287.81.

17

### 2. Whether Trooper Larsen is Statutorily Authorized to Conduct Traffic Stops to Enforce Wis. Stat. § 287.81

¶39 Iverson asserts that Trooper Larsen is without legal authority to effectuate this stop. However, the plain meaning of Wis. Stat. § 110.07, "Traffic officers; powers and duties," instructs otherwise. The statute states in relevant part:

> Members of the state traffic patrol shall:
>
> 1. <u>Enforce and assist in the administration of</u> . . . [Wis. Stat. §] <u>287.81</u> . . . .
>
> . . . .
>
> 3. Have authority to enter any place where vehicles subject to this chapter, ss. 167.31(2)(b) to (d) <u>and 287.81</u> and chs. 194, 218 and 341 to 350 are stored or parked at any time to examine such vehicles, <u>or to stop such vehicles while en route at any time upon the public highways to examine the same and make arrests for all violations thereof</u>.

Wis. Stat. § 110.07(1)(a)1., (a)3. (emphases added).

¶40 The statute further grants officers of the state traffic patrol "the arrest powers of a law enforcement officer under [Wis. Stat. §] 968.07, regardless of whether the violation is punishable by forfeiture or criminal penalty." Wis. Stat. § 110.07(2m).

¶41 The authority of state troopers is also addressed in Wis. Stat. ch. 23, entitled "Conservation." Specifically, Wis.

18

Stat. § 23.58 authorizes "an enforcing officer"[10] to "stop a person in a public place for a reasonable period of time when the officer reasonably suspects that such person is committing, is about to commit or has committed a violation of those statutes enumerated in s. 23.50(1)" and to "demand the name and address of the person and an explanation of the person's conduct." Wis. Stat. § 23.58.[11] Wisconsin Stat. § 287.81 is one of the statutes enumerated in Wis. Stat. § 23.50(1). Wis. Stat. § 23.50(1).

¶42 Finally, Wis. Stat. §§ 23.56 and 23.57 provide certain authority to conduct arrests, both with and without warrants, for violations of the statutes listed in Wis. Stat. § 23.50(1).[12]

---

[10] "'Enforcing officer' . . . means a person who has authority to act pursuant to a specific statute." Wis. Stat. § 23.51(3).

[11] "Such a stop may be made only where the enforcing officer has proper authority to make an arrest for such violation," and "[s]uch detention and temporary questioning shall be conducted in the vicinity where the person was stopped." Wis. Stat. § 23.58. Additionally, the enforcing officer must identify himself or herself as such. Id.

[12] This authority is limited by various conditions. Warrantless arrests in particular are authorized only where:

(a) The person refuses to accept a citation or to make a deposit under s. 23.66; or

(b) The person refuses to identify himself or herself satisfactorily or the officer has reasonable grounds to believe that the person is supplying false identification; or

(c) Arrest is necessary to prevent imminent bodily harm to the enforcing officer or to another.

(continued)

¶43 In sum, the Wisconsin Legislature has explicitly authorized state troopers to conduct traffic stops in order to investigate violations of Wis. Stat. § 287.81 and to arrest violators of the statute under specified conditions. Trooper Larsen therefore possessed statutory authority to stop Iverson's vehicle upon witnessing the disposal of a cigarette butt onto the highway. Whether the stop was constitutionally reasonable, however, is the question to which we now turn.

B.  Constitutional Authority to Conduct the Traffic Stop

1.  Whether a State Traffic Patrol Officer May Conduct a Warrantless Traffic Stop Based on Probable Cause or Reasonable Suspicion that a Violation of a Non-Traffic Civil Forfeiture Law Has Occurred

¶44 A state traffic patrol officer's traffic stop of a vehicle is a "seizure" of "persons" under the Fourth Amendment.[13] See Popke, 317 Wis. 2d 118, ¶11 (citations omitted). "An automobile stop must not be unreasonable under the circumstances. A traffic stop is generally reasonable if the officers have probable cause to believe that a traffic violation has occurred, or have grounds to reasonably suspect a violation has been or will be committed." Id. (citations and internal quotation marks omitted). The issue before us is whether it is

_____

Wis. Stat. § 23.57(1)(a)-(c).

[13] "[W]e have traditionally understood the Wisconsin Constitution's provision on search and seizure to be coextensive with the Fourth Amendment." State v. Houghton, 2015 WI 79, ¶49, 364 Wis. 2d 234, 868 N.W.2d 143 (citation omitted).

reasonable to effectuate a stop for a non-traffic civil forfeiture offense.

¶45 The court of appeals below concluded that a traffic stop may not be premised solely on a non-traffic civil forfeiture offense. In other words, even if an officer observes a violation of the littering statute, the officer is without legal authority to stop the vehicle. Examining our statement in Popke that "a police officer may . . . conduct a traffic stop when, under the totality of the circumstances, he or she has grounds to reasonably suspect that a crime or traffic violation has been or will be committed," Popke, 317 Wis. 2d 118, ¶23 (emphases added) (citation omitted), the court of appeals seemingly concluded that in order to so effectuate a stop, the officer must be granted specific authority under Wis. Stat. § 968.24 ("Temporary questioning without arrest" to investigate suspected criminal activity) or Wis. Stat. § 345.22 ("Authority to arrest without a warrant" for violations of traffic regulations).

¶46 The opinion of the court of appeals does not consider, however, whether Wis. Stat. § 110.07 ("Traffic officers; powers and duties") or Wis. Stat. § 23.58 ("Temporary questioning without arrest" to investigate suspected violations of certain enumerated statutes, including Wis. Stat. § 287.81), impact the analysis.[14]

---

[14] Krier is not controlling for this reason. In Krier the court of appeals relied on Wis. Stat. § 968.24 for its definition of the permissible bounds of the police officer's

(continued)

21

¶47 Under the court of appeals' interpretation, an officer would be required to sit idly by even if an individual threw an entire bag of garbage out of a vehicle's window, simply because littering is a non-traffic civil forfeiture offense.[15]  Neither Wis. Stat. § 968.24, nor Wis. Stat. § 345.22, nor Popke require this conclusion.  Although § 968.24 and § 345.22 pertain only to crimes and violations of traffic regulations, neither statute

---

conduct.  E.g., State v. Krier, 165 Wis. 2d 673, 678, 478 N.W.2d 63 (Ct. App. 1991) ("We hold that when a person's activity can constitute either a civil forfeiture or a crime, a police officer may validly perform an investigative stop pursuant to s. 968.24, Stats." (emphasis added)).  In this case, however, Trooper Larsen derived his authority from Wis. Stat. § 110.07 and Wis. Stat. § 23.58.  These statutes, in contrast to Wis. Stat. § 968.24, authorize traffic stops based on conduct punishable by civil forfeiture alone.  See Wis. Stat. § 110.07(1)(a)3.; Wis. Stat. § 23.58.

[15] Some might suggest that an officer who witnesses littering on the highway should get a warrant or issue a ticket in the mail, but one quickly sees how these are remedies in search of a problem.  First, the issuance of a littering citation is notably different from the issuance of, for example, a parking ticket; the latter is placed on a stopped vehicle and tracks the registered owner of the vehicle rather than the person who actually parked the car.  See, e.g., State of Wisconsin Department of Transportation, Division of Motor Vehicles, Unpaid Parking Tickets, Judgments and Towing and Storage Fees, http://wisconsindot.gov/Pages/dmv/vehicles/prkg-tckt/unpaid-tickets.aspx (last visited Sept. 30, 2015) (describing the Traffic Violation and Registration Program and noting that "[a]n authority issuing a parking ticket will send two notices to the registered owner of the vehicle").  Second, if an officer were relegated to such remedies, the officer would most likely be precluded from determining to whom a citation should be issued.  In effect, the officer would not be able to issue the ticket to the person who is responsible for the offense.  These approaches are ill-suited for a statute like Wis. Stat. § 287.81.

forecloses traffic stops to enforce non-traffic civil forfeiture offenses. Similarly, while Popke analyzed an officer's authority to effectuate traffic stops for crimes and for violations of traffic regulations, Popke, 317 Wis. 2d 118, ¶¶23, 28, our statement in Popke that "a police officer may . . . conduct a traffic stop when, under the totality of the circumstances, he or she has grounds to reasonably suspect that a crime or traffic violation has been or will be committed," id., ¶23 (emphases added) (citation omitted), did not purport to circumscribe the universe of possible scenarios within which traffic stops permissibly may occur, or to make such limits contingent on whether the legislature has titled a particular law a "traffic regulation." The facts in Popke involved a stop based on criminal and traffic offenses, not a non-traffic civil forfeiture offense. Thus, the language in Popke was limited to the issue then before the court. The question of whether a non-traffic civil forfeiture offense can justify a vehicular stop is before the court today.

¶48 Iverson would attach constitutional significance to the legislature's categorization of civil forfeitures as either traffic-related or non-traffic-related, with the effect of limiting the ability of law enforcement officers to administer laws that the legislature saw fit to enact. But the legislature did not place any such limits on law enforcement.

¶49 Some civil violations, such as littering, can occur whether or not a vehicle is involved. Indeed, the legislature may have found characterization of Wis. Stat. § 287.81 as a

"traffic regulation" improper simply because not all littering is done on the roads; the prohibition contained in the statute applies to all areas of Wisconsin, not just the state's highways. See Wis. Stat. § 287.81(2)(a). Perhaps the legislature found it more appropriate to classify the littering offense as one pertaining to "Solid Waste Reduction, Recovery and Recycling," Wis. Stat. ch. 287, and group it with similar legislation, see Wis. Stat. ch 280 ("Pure Drinking Water"); Wis. Stat. ch. 285 ("Air Pollution") rather than with the traffic laws. Whatever the reason for Wis. Stat. § 287.81's separation from the traffic laws, the legislature did not limit the littering statute to just one domain. Instead, the broad language of the statute applies to Wisconsin's highways and the state traffic patrol has been given authority to enforce it under Wis. Stat. § 110.07(1)(a)1.[16] The statute's classification as traffic-related or not does not by itself provide grounds for departure from our usual Fourth Amendment analysis. "We cannot

---

[16] We add that Wis. Stat. § 345.20, a provision setting out procedure governing "traffic forfeiture actions," makes specific mention of the littering statute. Wis. Stat. § 345.20 (emphasis added). Wisconsin Stat. § 345.20 provides that procedures set out in the "Conservation" chapter of the Wisconsin Statutes, Wis. Stat. ch. 23, "apply to actions in circuit court to recover forfeitures for violations of s. 287.81." Wis. Stat. § 345.20(g). At the same time, Wis. Stat. § 23.53 provides that the citation created within the "Conservation" chapter governs violations of certain statutes enumerated within that chapter, "except that the uniform traffic citation created under s. 345.11 may be used by . . . a traffic officer employed under s. 110.07 in enforcing s. 287.81." Wis. Stat. § 23.53(1).

24

accept that the search and seizure protections of the Fourth Amendment . . . can be made to turn upon such trivialities." Whren v. U.S., 517 U.S. 806, 815 (1996) (Fourth Amendment protections not dependent on whether officers followed police enforcement practices).

¶50 If we otherwise analyze the reasonableness of this traffic stop, not in terms of the traditional totality of the circumstances test based on Iverson's driving on the evening in question but, more abstractly, in terms of whether a traffic stop for littering is ever reasonable, we arrive at the conclusion that such a stop is reasonable. See, e.g., Popke, 317 Wis. 2d 118, ¶11; see also Pennsylvania v. Mimms, 434 U.S. 106, 108-09 (1977). We judge reasonableness in this context by "balanc[ing] . . . the public interest and the individual's right to personal security free from arbitrary interference by law officers." See Malone, 274 Wis. 2d 540, ¶21 (quoting Mimms, 434 U.S. at 109).

¶51 "A routine traffic stop . . . is a relatively brief encounter and 'is more analogous to a so-called "Terry stop" . . . than to a formal arrest.'" Knowles v. Iowa, 525 U.S. 113, 117 (1998) (citation omitted); see also Malone, 274 Wis. 2d 540, ¶24 (analogizing traffic stops and Terry stops).

¶52 We clarified last term that "reasonable suspicion that a traffic law has been or is being violated is sufficient to justify all traffic stops," State v. Houghton, 2015 WI 79, ¶30, 364 Wis. 2d 234, 868 N.W.2d 143, and noted that, "[i]n at least some circumstances, reasonable suspicion that a non-traffic-

25

related law has been broken may also justify a traffic stop." Id., ¶30 n.6. After reviewing the decisions of the federal courts of appeals, we reasoned that the brief nature of traffic stops, "weighed against the public interest in safe roads," warranted our conclusion. See id., ¶30.

¶53 The current case features a violation of a law applicable to the state's highways and statutorily enforceable by the state's traffic patrol. Enforcement of the law conceivably helps keep the state's roads safe.[17] In addition, we note that the legislature has specifically defined the terms according to which officers may briefly detain potential violators of Wis. Stat. § 287.81. Our approval of the traffic stop at issue is therefore not at odds with Houghton. A reasonable suspicion that a violation of the littering statute, § 287.81, has occurred justifies a brief and limited traffic stop. The more onerous standard of probable cause would also therefore justify a traffic stop. See Houghton, 364 Wis. 2d 234, ¶21.

---

[17] In its brief before this court, the State asserted that littering creates hazards for other motorists and that discarded lit cigarettes in particular can cause brush, grass, and forest fires leading to property damage. These dangers are self-evident and at least as serious as many of the interests with which Wisconsin's traffic-related civil forfeiture laws are apparently concerned. See, e.g., Wis. Stat. § 341.04 (prohibiting the operation of an unregistered or improperly registered vehicle); Wis. Stat. § 346.20(1) (requiring vehicle operators to yield the right-of-way at intersections to vehicles in funeral processions when the latter have their headlights lighted); § 346.29(3) (unlawful to use certain bridges for fishing).

¶54 We have already held, more broadly, that "arrests for civil forfeitures are not per se unconstitutional." State v. Pallone, 2000 WI 77, ¶43, 236 Wis. 2d 162, 613 N.W.2d 568 (open intoxicants in a motor vehicle), overruled on other grounds by State v. Dearborn, 2010 WI 84, 327 Wis. 2d 252, 786 N.W.2d 97; see also City of Milwaukee v. Nelson, 149 Wis. 2d 434, 456, 439 N.W.2d 562 (1989) (loitering).[18] Neither are traffic stops to enforce civil forfeiture laws per se unconstitutional, even when those laws are not technically "traffic regulations." As we intimated in Popke, this court has no authority to decide which laws "are sufficiently important to merit enforcement." See Popke, 317 Wis. 2d 118, ¶19 (quoting Whren, 517 U.S. at 819).

---

[18] In Nelson we "note[d] that it has long been established in Wisconsin" that law enforcement officers generally may make warrantless arrests upon probable cause for ordinance violations occurring in the presence of officers. City of Milwaukee v. Nelson, 149 Wis. 2d 434, 458, 439 N.W.2d 562 (1989) (citation omitted). Wisconsin Stat. § 110.07 once contained such an "in presence" requirement. See Wis. Stat. § 110.07(2m) (1971-72). However, the legislature later eliminated this requirement, see Wis. Stat. § 110.07 (1973-74), and today officers of the state traffic patrol possess "the arrest powers of a law enforcement officer under [Wis. Stat. §] 968.07, regardless of whether the violation is punishable by forfeiture or criminal penalty." Wis. Stat. § 110.07(2m) (2011-12). We do not address today what the elimination of that requirement may mean, given that the violation here occurred in the officer's presence. See Atwater v. City of Lago, 532 U.S. 318, 340 n.11 (2001) (declining to speculate on "in presence" requirement for misdemeanor arrests, but quoting statement of dissent in Welsh v. Wisconsin, 466 U.S. 740, 756 (1984) (White, J., dissenting), that "the requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment").

We entrust that task to "the good sense (and, failing that, the political accountability)" of our lawmakers and law enforcers. Atwater v. City of Lago, 532 U.S. 318, 323-24, 353-54 (2001) (applying usual probable cause standard to warrantless arrests for violation of misdemeanor of failing to wear seatbelt).

¶55 We conclude that a traffic stop to enforce Wis. Stat. § 287.81 is generally reasonable if an officer has probable cause or reasonable suspicion that a violation of § 287.81 has occurred.

2. Whether Trooper Larsen had Probable Cause or Reasonable Suspicion that a Violation of Wis. Stat. § 287.81 Had Occurred

¶56 "Probable cause refers to the 'quantum of evidence which would lead a reasonable police officer to believe' that a traffic violation has occurred." Popke, 317 Wis. 2d 118, ¶14 (quoting Johnson v. State, 75 Wis. 2d 344, 348, 249 N.W.2d 593 (1977)). "The evidence need not establish proof beyond a reasonable doubt or even that guilt is more probable than not, but rather, probable cause requires that 'the information lead a reasonable officer to believe that guilt is more than a possibility.'" Id. (quoting Johnson, 75 Wis. 2d at 348-49).

¶57 Trooper Larsen testified that he witnessed a vehicle drift within its lane and twice come to a complete stop at a flashing yellow light despite the absence of traffic.[19] He then

---

[19] Although we rely on Trooper Larsen's testimony regarding the reason for the traffic stop, this opinion should not be read to exclude a traffic stop based upon the conduct that Trooper Larsen witnessed prior to his observation of the disposal of the cigarette butt. In other words, Trooper Larsen might well have

(continued)

saw a cigarette butt "being thrown from the passenger side of the vehicle."  The cigarette butt hit the ground and scattered ashes across the right lane of the road.

¶58 It is a violation of Wis. Stat. § 287.81 to "[d]eposit[] or discharge[] any solid waste on or along any highway . . . ."  Wis. Stat. § 287.81(2)(a).  We conclude that, based on his observations, Trooper Larsen had probable cause to believe that an occupant[20] of Iverson's vehicle had violated § 287.81 by throwing a cigarette butt onto the highway.

¶59 Because Trooper Larsen's traffic stop was based on probable cause, we need not consider whether he also possessed reasonable suspicion that a violation of the littering statute had occurred.

## V.   CONCLUSION

¶60 We conclude that: (1) the Wisconsin Legislature has explicitly authorized state troopers to conduct traffic stops in

---

possessed probable cause or reasonable suspicion to conduct a traffic stop at this point in time.  Cf. State v. Post, 2007 WI 60, ¶24, 301 Wis. 2d 1, 733 N.W.2d 634 ("[A] driver's actions need not be erratic, unsafe, or illegal to give rise to reasonable suspicion.").

[20] Despite Iverson's suggestions to the contrary, the question of who threw the cigarette butt out of the vehicle is not relevant to our determination today.  For a traffic stop to be lawful as to all occupants, "[t]he State need not establish that the police had reasonable, articulable suspicion to seize the particular defendant before the court, but only that the police possessed reasonable, articulable suspicion to seize someone in the vehicle."  State v. Harris, 206 Wis. 2d 243, 260, 557 N.W.2d 245 (1996).

order to investigate violations of Wis. Stat. § 287.81 and to arrest violators of the statute under specified conditions; (2) a traffic stop to enforce § 287.81 is generally reasonable if an officer has probable cause or reasonable suspicion that a violation of § 287.81 has occurred; (3) discarding a cigarette butt onto a highway violates § 287.81; and (4) based on his observations, Trooper Larsen had probable cause to believe that an occupant of Iverson's vehicle had violated § 287.81 by throwing a cigarette butt onto the highway.

¶61 The defendant's motion to suppress evidence obtained during this traffic stop and to dismiss this case should have been denied.[21] We reverse the decision of the court of appeals and remand the case to the circuit court for reinstatement of charges and further proceedings consistent with this opinion.

*By the Court*.-The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶62 REBECCA G. BRADLEY, J., did not participate.

---

[21] In granting Iverson's motion, the circuit court suggested that violation of the littering statute was Trooper Larsen's "excuse" for stopping Iverson's vehicle. But "pretextual traffic stops . . . are not per se unreasonable under the Fourth Amendment." Houghton, 364 Wis. 2d 234, ¶25 (explaining the holding of Whren v. U.S., 517 U.S. 806 (1996)). As the traffic stop here was based on "an objectively ascertainable basis for probable cause," Trooper Larsen's "subjective motivations" are "of little concern." See State v. Kramer, 2009 WI 14, ¶27, 315 Wis. 2d 414, 759 N.W.2d 598.

¶63 SHIRLEY S. ABRAHAMSON, J. *(concurring).* This case addressing the constitutionality of a vehicle stop based on a non-traffic forfeiture offense is one of first impression.[1] I conclude that a state trooper has authority, under certain circumstances, to stop a vehicle based on probable cause or reasonable suspicion of a violation of Wisconsin's littering statute, Wis. Stat. § 287.81.[2]

¶64 My concern is that the majority opinion seems to explicitly reject the touchstone of Fourth Amendment jurisprudence.[3] Majority op., ¶50. The Fourth Amendment prohibits <u>unreasonable</u> searches and seizures.[4] "An automobile stop must not be unreasonable under the circumstances."[5]

---

[1] Other cases have considered whether, outside the context of a vehicle stop, a stop for a non-traffic forfeiture offense is constitutionally permissible. See <u>City of Milwaukee v. Nelson</u>, 149 Wis. 2d 434, 439 N.W.2d 562 (1989).

[2] <u>See</u> majority op., ¶50.

[3] U.S. Const. amend. IV.

[4] <u>See</u> <u>Ohio v. Robinette</u>, 519 U.S. 33, 39 (1996) ("Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances."); <u>Pennsylvania v. Mimms</u>, 434 U.S. 106, 109 (1977) ("Reasonableness, of course, depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'") (quoting <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 878 (1975)).

[5] <u>State v. Popke</u>, 2009 WI 37, ¶11, 317 Wis. 2d 118, 765 N.W.2d 569 (citing <u>State v. Gaulrapp</u>, 207 Wis. 2d 600, 605, 558 N.W.2d 696 (Ct. App. 1996)); <u>see also</u> <u>State v. Houghton</u>, 2015 WI 79, ¶29, 364 Wis. 2d 234, 868 N.W.2d 143 ("It is undisputed that traffic stops must be reasonable under the circumstances.") (citing <u>Gaulrapp</u>, 207 Wis. 2d at 605).

Reasonableness is gauged under the totality of the circumstances.[6]

¶65 The majority opinion explains how it analyzes the reasonableness of the automobile stop in the instant case: "not in terms of the traditional totality of the circumstances test based on Iverson's driving on the evening in question but, more abstractly, in terms of whether a traffic stop for littering is ever reasonable . . . ."[7] The majority opinion does not explain what its "abstract" approach entails or how this "abstract" approach meshes with the traditional reasonableness under the totality of the circumstances analysis.[8]

¶66 The court has frequently stated that reasonableness under the Fourth Amendment depends on a court's balancing the public interest against an individual's right to personal

---

[6] See Mimms, 434 U.S. at 108-09 ("The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.") (quoting Terry v. Ohio, 392 U.S. 1, 19 (1968)); see also Robinette, 519 U.S. at 39 ("Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances."); State v. Malone, 2004 WI 108, ¶21, 274 Wis. 2d 540, 683 N.W.2d 1 (a court must "carefully scrutinize the totality of the circumstances.").

[7] Majority op., ¶50.

[8] The majority opinion merely states that "if we were to analyze the totality of the circumstances of the stop at issue, we might not reach the question before the court and that analysis would only serve to restate longstanding legal principles." Majority op., ¶22.

security free from interference by law enforcement.[9] In striking this balance, a court must carefully scrutinize the totality of the circumstances.[10] The majority opinion does not apply this balancing test.

¶67 When a court looks at the public interest in a typical vehicle stop case, the underlying offense is ordinarily a criminal or traffic violation. The public interest is high in such a case. Public safety is ordinarily at risk by criminal behavior or a violation of traffic laws.[11] The public interest in stopping the vehicle in the instant case is comparatively low; there is no evidence that throwing a single cigarette butt from Iverson's car created any hazard. In the case of a civil, non-traffic, forfeiture offense (like littering), the state's interests in ensuring safe travel and combating crime are either

---

[9] Mimms, 434 U.S. at 109 ("Reasonableness, of course, depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'") (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)); see also Malone, 274 Wis. 2d 540, ¶21 (citing Mimms).

[10] Malone, 274 Wis. 2d 540, ¶21.

[11] See State v. Day, 168 P.3d 1265, 1269 (Wash. 2007) (quoting State v. Johnson, 909 P.2d 293, 306 (Wash. 1996)); see also State v. Houghton, 2015 WI 79, ¶56, 364 Wis. 2d 234, 868 N.W.2d 143 (recognizing that "[t]he Wisconsin Statutes contain a tremendous number of provisions directed toward safety on the roadway").

non-existent or significantly weaker than in a vehicle stop for a crime or a traffic violation.[12]

¶68 The individual's countervailing interest is personal security and freedom from intrusion by the government. Unlike other courts, the majority opinion is dismissive of the intrusiveness of a vehicle stop. A vehicle stop by a law enforcement officer is a "major interference in the lives of the [vehicle's] occupants." Coolidge v. New Hampshire, 403 U.S. 443, 478 (1971).

¶69 An intrusion on privacy occurs every time a law enforcement officer stops a car, regardless of the motivation for the stop. A vehicle stop interferes with a person's freedom of movement and is inconvenient, time-consuming, and anxiety-inducing. Moreover, a vehicle stop provides a law enforcement

---

[12] For an example of the United States Supreme Court's considering the non-criminal, civil forfeiture nature of an offense in determining whether exigent circumstances exist to justify a warrantless entry into a home, see Welsh v. Wisconsin, 466 U.S. 740, 749-51 (1984). The gravity of the offense is an important part of the constitutional analysis. Welsh, 466 U.S. at 753.

The seriousness of the underlying offense is also relevant to whether a stop is constitutionally permissible in other contexts. See United States v. Griggs, 498 F.3d 1070, 1081 (9th Cir. 2007) (holding that in assessing an investigatory stop based on a completed misdemeanor, in that case playing a car stereo at excessive volume, "a reviewing court must consider the nature of the misdemeanor offense in question, with particular attention to the potential for ongoing or repeated danger . . . and any risk of escalation . . . . An assessment of the 'public safety' factor should be considered within the totality of the circumstances, when balancing the privacy interests at stake against the efficacy of a Terry stop . . . .").

officer with an opportunity for further intrusion on the driver, passengers, and the contents of the vehicle.[13]

¶70 For this reason, some courts have declined to extend the general reasonable suspicion standard in striking the balance between public and individual interests in cases of vehicle stops for extremely minor infractions, such as a parking violations.[14]

¶71 The majority opinion suggests that "the issuance of a littering citation is notably different from the issuance of, for example, a parking ticket," because parking tickets are placed on a stopped vehicle and track the registered owner, while a littering citation is issued to the litterer.[15] True, but constitutionally not relevant. There is a similarity between stopping a vehicle for littering and stopping a moving vehicle for an observed parking violation. In both instances the public interest in enforcing the minor offense is comparatively low, while the individual's right to be free from

---

[13] See, e.g., State v. Williams, 2002 WI 94, ¶2, 255 Wis. 2d 1, 646 N.W.2d 834.

[14] See, e.g., Day, 168 P.3d at 1269-70 (declining to allow an investigative stop under Terry for parking infractions); State v. Holmes, 569 N.W.2d 181, 185-86 (Minn. 1997) (concluding that a parking violation was not sufficiently serious to merit a Terry stop, permitting stops based solely on probable cause and "only if the stop is necessary to enforce the violation . . . ."). See also State v. Duncan, 43 P.3d 513, 517-19 (Wash. 2002) (declining to extend Terry to general civil infractions).

[15] Majority op., ¶47 n.15.

the intrusion of having the vehicle stopped remains the same as in any other vehicle stop.

¶72 When an officer has reasonable suspicion to issue a parking ticket or a littering citation, in the absence of some public safety risk or other significant public interest, the public interest in issuing the citation does not automatically overcome an individual's right to be free from the intrusion of having the vehicle stopped.

¶73 This distinction between an infraction that does and does not present a public safety risk or otherwise violate a significant public interest is illustrated by several examples on which the majority opinion relies. The majority opinion illuminates that "discarded lit cigarettes in particular can cause brush, grass, and forest fires leading to property damage."[16] The majority opinion also explains that throwing a large bag of trash out of a moving vehicle is dangerous to others who use the road.[17]

¶74 The examples in the majority opinion suggest circumstances that would be relevant under a totality of the circumstances analysis. A cigarette butt thrown out of a vehicle in a dry, fire-prone area may very well pose a risk to public safety and the environment. No such danger by the single cigarette butt in the instant case is alleged. Ash from a

---

[16] Majority op., ¶53 n.17.

[17] Majority op., ¶47.

cigarette likely poses no danger at all.[18]  A trash bag thrown out of a moving vehicle obviously may very well pose a danger to other motorists; a single cigarette butt ordinarily does not. These examples flesh out the totality of circumstances to be considered.

¶75  In the instant case, no proof of a public safety risk was offered.  Iverson was driving in the wee hours of the morning in the city of La Crosse.  There is no evidence in the record suggesting that other drivers on the road were somehow endangered by the passenger's tossing a cigarette butt, let alone that there was a risk of fire, property damage, or other significant danger as a result of the discarded cigarette.

¶76  Rather, the traffic stop in this case is a variation on familiar themes.  The trooper stopped Iverson based on a minor violation, here littering.  See Wis. Stat. § 287.81.  The stop was pretextual.  The trooper's true motive was not to issue a citation for littering, but to investigate a more serious traffic offense or potentially criminal offense, namely drunk driving.  The trooper saw Iverson's vehicle driving late at night and began following the vehicle.  The trooper saw the vehicle drift within its lane and stop at two flashing yellow lights despite the absence of traffic.

¶77  The trooper evidently had a hunch that the driver was intoxicated (and his hunch was apparently correct).  The trooper

---

[18] Cf. State v. Qualls, No. 2014AP141-CR, unpublished slip op., ¶6 (Wis. Ct. App. Oct. 8, 2014) (not reaching the issue of whether ash constituted "litter" under a village ordinance).

concluded, however, that he did not have reasonable suspicion to stop the vehicle.[19] Then came the "a-ha" moment. When the trooper saw a cigarette butt thrown from the passenger side of the vehicle, the trooper concluded that he had grounds to stop the vehicle.

¶78 Underscoring the pretextual nature of the stop, neither Iverson nor his passenger was cited for littering. Instead, Iverson was arrested for drunk driving.

¶79 The circuit court relied on the pretextual nature of the stop in granting the motion to suppress. However, under Whren v. United States, 517 U.S. 806, 813 (1996), and other cases, the constitutional reasonability of a stop does not

---

[19] Majority op., ¶7 & n.3. The trooper stated that "prior to the cigarette butt being thrown . . . I didn't feel . . . that I had the reasonable suspicion to initiate a traffic stop . . . ."

The majority opinion insinuates that drifting within a lane and stopping at flashing yellow lights constitute reasonable suspicion of drunk driving. Majority op., ¶7 n.3. That conclusion is questionable. See State v. Post, 2007 WI 60, ¶¶18-21, 301 Wis. 2d 1, 733 N.W.2d 634 (concluding that repeatedly weaving within a single lane, standing alone, does not constitute reasonable suspicion); State v. McConnell, No. M2012-02238-CCA-R3-CD, 2013 WL 1912584, at *4 (Tenn. Ct. App. May 8, 2013) (finding no reasonable suspicion when the defendant stopped at a flashing yellow light for several seconds before going through the intersection).

Wisconsin Stat. § 346.39(2) provides that "operators of vehicles may proceed through the intersection or past [a flashing yellow light] only with caution."

depend on the subjective motivations of the officer.[20] Pretextual stops have been accepted under the Fourth Amendment.

¶80 In the instant case the dominant factors to gauge in assessing the reasonableness of the vehicle stop under the totality of the circumstances can be summarized as follows: the public interest in this particular stop for littering was slight or insubstantial; a vehicle stop is a significant intrusion on a person's security; the statutory violation was flimsy; and the reason for the vehicle stop was pretextual. This combination of circumstances, had the case been presented this way, might lead me to conclude that the vehicle stop was not reasonable under the Fourth Amendment.

¶81 I caution that the majority opinion should not be over read. I do not think the majority intends its opinion to be read as granting law enforcement officers extraordinarily broad powers to stop vehicles without meaningful judicial review.

¶82 In sum, the traditional Fourth Amendment rules still apply in Wisconsin. The Fourth Amendment prohibits unreasonable

---

[20] This rule has been criticized. See, e.g., 1 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment, § 1.4(f) (5th ed. 2012) (critiquing Whren v. United States, 517 U.S. 806 (1996)); State v. Newer, 2007 WI App 236, ¶4 n.2, 306 Wis. 2d 193, 742 N.W.2d 923 (Ct. App. 2007) ("We note that the officer's subjective motivation for making a stop is not the issue; if the officer has facts that could justify reasonable suspicion (or probable cause), it is of no import that the officer is not subjectively motivated by a desire to investigate this suspicion. We question the wisdom of this rule when it comes to extremely minor traffic violations, but that is for another day.") (internal citations omitted) (citing Whren v. United States, 517 U.S. 806, 813 (1996); State v. Baudhuin, 141 Wis. 2d 642, 650-51, 416 N.W.2d 60 (1987)).

9

searches and seizures.[21] Reasonableness is gauged under the totality of the circumstances.[22] "An automobile stop must not be unreasonable under the circumstances."[23]

¶83 Reasonableness depends on a court's balancing the public interest against an individual's right to personal security free from interference by law enforcement. In striking this balance, a court must carefully scrutinize the totality of the circumstances. Unfortunately, the majority opinion did not apply these rules. I therefore write separately.

¶84 Before I conclude, however, I add a comment about the statutes applicable in the instant case. The statutes at issue are part of Wis. Stat. chapter 287, entitled "Solid Waste Reduction, Recovery and Recycling."

¶85 Wisconsin Stat. § 287.81(2), entitled "Littering," provides that a person who "[d]eposits or discharges any solid waste on or along any highway" or "[p]ermits any solid waste to

---

[21] U.S. Const. amend. IV.

[22] Mimms, 434 U.S. at 108-09 ("The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'") (quoting Terry v. Ohio, 392 U.S. 1, 19 (1968)); see also Robinette, 519 U.S. at 39 ("Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances."); Malone, 274 Wis. 2d 540, ¶21 (a court must "carefully scrutinize the totality of the circumstances.").

[23] Popke, 317 Wis. 2d 118, ¶11; see also Houghton, 364 Wis. 2d 234, ¶29 ("It is undisputed that traffic stops must be reasonable under the circumstances.") (citing Gaulrapp, 207 Wis. 2d at 605).

be thrown from a vehicle operated by the person" may be required to forfeit no more than $500.[24]

¶86  Section 287.01(10) adopts the meaning of "solid waste" set forth in Wis. Stat. § 289.01(33).[25]  The definition of "solid waste" lists many materials, including garbage, refuse, and materials resulting from "community activities."[26]  "Refuse" is defined in part as "matters produced from industrial or community life."[27]

¶87  The phrases "community activities" and "produced from industrial or community life" defy almost any effort at definition.

¶88  Would a simpler littering statute not intimately connected with solid waste suffice, so a court need not spend 14 paragraphs, 9 double-spaced pages, and a lot of dictionary research for a discourse on whether a cigarette butt violates the littering statute?  "Littering" is a word in common usage, with a generally accepted meaning, but the word "littering" is not used in chapter 287 other than in the title to subchapter IV of chapter 287 and the title of Wis. Stat. § 287.81.

¶89  Should the legislature take another look at Wis. Stat. §§ 287.01 and 287.81?  See Wis. Stat. § 13.92(2)(j).

¶90  For the reasons set forth, I write separately.

---

[24] Wis. Stat. § 287.81(2)(a), (b).

[25] Chapter 289 is titled "Solid Waste Facilities."

[26] Wis. Stat. § 289.01(33).

[27] Wis. Stat. § 289.01(28).

¶91 I am authorized to state that Justice ANN WALSH BRADLEY joins ¶¶64-66 of this opinion.

¶92 ANN WALSH BRADLEY, J. *(concurring).* I agree with the majority conclusion that "the officer in this case had probable cause to believe that an occupant of Iverson's vehicle had violated § 287.81 by throwing a cigarette butt onto the highway." Majority Op., ¶4.

¶93 I write separately, however, because I disagree with the majority's failure to employ a totality of circumstances analysis. As the above concurrence explains, a totality of the circumstance analysis is, has been, and remains the touchstone of Fourth Amendment jurisprudence. Accordingly, I join paragraphs 64-66 of the above concurrence.