SHIRLEY S. ABRAHAMSON, J.
*177 *94 ¶ 1 This is a review of an unpublished decision of the court of appeals affirming a judgment of conviction of the Circuit Court for Dodge County, Steven G. Bauer, Judge.[1] Steven Delap, the defendant, was convicted of obstructing an officer in violation of Wis. Stat. § 946.41(1) and possession of drug paraphernalia in violation of Wis. Stat. § 961.573(1), both as a repeater.
¶ 2 In the circuit court, the defendant claimed that his arrest was unlawful and that the evidence seized should be suppressed. The defendant argued that law enforcement officers, who had two valid warrants for his arrest, unlawfully attempted to stop him in the driveway of his home, unlawfully pursued him into his home to effectuate his arrest, and unlawfully seized evidence obtained from a search incident to his arrest.
¶ 3 The defendant claims that the arrest and subsequent search violated his rights under the *95 Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution.
¶ 4 The circuit court denied the defendant's motion to suppress the evidence. The circuit court concluded that the hot pursuit doctrine permitted the law enforcement officers in the instant case to follow the defendant into his home to effectuate his arrest. Relying on the hot pursuit doctrine, the court of appeals affirmed the circuit court's denial of the defendant's motion to suppress evidence.
¶ 5 We affirm the decision of the court of appeals, but on grounds different than those relied upon by the circuit court and court of appeals. We conclude that the instant case is governed by Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and we need not address the applicability of the hot pursuit doctrine.[2]
¶ 6 In Payton, the United States Supreme Court declared that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton, 445 U.S. at 603, 100 S.Ct. 1371.
¶ 7 In the instant case, law enforcement officers had two valid arrest warrants based on probable cause for the arrest of the defendant. The facts and circumstances known to the officers at the time they located the defendant were sufficient to form probable cause to believe that the individual they saw entering the residence was the defendant and that the defendant lived in the residence into which he fled.
*96 ¶ 8 Thus, applying the teachings of Payton, we conclude that the law enforcement officers in the instant case lawfully entered the defendant's residence to execute the two valid warrants for the defendant's arrest and lawfully seized evidence discovered in the search incident to the defendant's arrest.[3]
*178 ¶ 9 Accordingly, we affirm the decision of the court of appeals.
I
¶ 10 The following facts are taken from the testimony elicited at the hearing on the defendant's motion to suppress evidence and from the circuit court's findings based on that testimony.
¶ 11 On September 6, 2015, Sergeant Michael Willmann and Deputy Dustin Waas of the Dodge County Sheriff's Department arrested the defendant in his home.
¶ 12 Approximately one month prior to the defendant's arrest, Sergeant Willmann overheard that his colleague, Deputy John Gallenbeck, "conduct[ed] a traffic stop on a vehicle where the driver subsequently fled from the vehicle and went into a wooded area and deputies were unable to locate him." Deputy Gallenbeck had learned from a passenger in the vehicle that the fleeing driver "was Steven Delap [the defendant] and that he was living at 110 Milwaukee Street in Neosho."
¶ 13 Approximately one week prior to the defendant's arrest, Sergeant Willmann "received a teletype correspondence from the Walworth County Sheriff's *97 Office stating that [the defendant] was involved in a very similar incident ... where he had fled from a traffic stop in the same type of manner." The teletype indicated that the defendant lived at 110 Milwaukee Street.
¶ 14 Sergeant Willmann ran the defendant's name through Wisconsin Department of Transportation and National Crime Information Center files, which turned up two valid and outstanding warrants for the defendant's arrest: one through Jefferson County and another through the Wisconsin Department of Corrections. Because of the defendant's prior history of fleeing police, Sergeant Willmann requested that Deputy Waas accompany him to arrest the defendant pursuant to the two arrest warrants.
¶ 15 At about 10:00 p.m. on September 6, 2015, Sergeant Willmann and Deputy Waas went to 110 Milwaukee Street in Neosho to arrest the defendant pursuant to the two outstanding arrest warrants. Sergeant Willmann was in full uniform: green pants, tan shirt, patches, a badge, and a duty belt. The officers parked about a block away from 110 Milwaukee Street out of concern that the defendant "would either run or not answer the door" if they parked closer. They left their vehicles and walked down Milwaukee Street, counting down the numbers on the houses as they went. Sergeant Willmann recalled that the last building number he counted was 120 before seeing the final building on the 100 block of Milwaukee Street. That building was a duplex, and based on his counting, Sergeant Willmann believed that one of the two doors at the duplex had to be 110 Milwaukee Street.
¶ 16 When Sergeant Willmann walked "towards what [he] believed [was] the residence," he saw a man *98 standing next to a car parked on Milwaukee Street and another man walking down the driveway in front of the duplex towards that car. As Sergeant Willmann and Deputy Waas approached, the man who was walking down the driveway turned and looked at the officers before turning around and running towards the back of the duplex. Sergeant Willmann shined his flashlight on the individual and shouted, "Stop, police!" but the man did not stop and instead continued running towards the back of the duplex.
¶ 17 Sergeant Willmann gave chase. Based upon the man's proximity to 110 Milwaukee Street and his reaction upon seeing the two police officers, Sergeant Willmann believed that the fleeing man was the defendant, Steven Delap.
*179 ¶ 18 When the man got to the rear door of the residence, he went inside and began shutting the door. Sergeant Willmann used his shoulder to "keep the door from latching completely shut." Sergeant Willmann and the man pushed back and forth on the door until Deputy Waas joined Sergeant Willmann. The two police officers together pushed the door open.
¶ 19 At some point, one of the officers pulled out his Taser, "got [the defendant] to the ground, [and] got [the defendant] in cuffs." After the arrest, the fleeing individual was identified as Steven Delap, the defendant.
¶ 20 A subsequent search incident to the defendant's arrest revealed three syringes and a silver tube used for smoking crack cocaine in the defendant's right cargo pocket.
¶ 21 The defendant was charged with one count of obstructing an officer in violation of Wis. Stat. § 946.41(1) and possession of drug paraphernalia in violation of Wis. Stat. § 961.573(1), both as a repeater.
*99 ¶ 22 The defendant moved to suppress the evidence obtained as a result of the search incident to his arrest. The defendant argued that the officers' attempt to stop him while he was still in his driveway was unlawful, and further, that it was unlawful for the officers to pursue him into his home in order to arrest him.
¶ 23 At the suppression hearing, the circuit court seemed inclined to rule that the officers lawfully entered the defendant's home under the rationale announced in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The circuit court stated that "[t]he bottom line is there's a legitimate arrest warrant for you and the police officer[s], through their investigation, had reason to believe and probable cause that you lived there, okay. That's all I needed, probable cause that you lived there and they had the arrest warrant. That's enough."
¶ 24 Nevertheless, the circuit court's written order denied the defendant's motion on the basis that the officers' entry into the home was permitted under the hot pursuit doctrine. The defendant pleaded no contest to the charges against him and appealed. The court of appeals affirmed the conviction, relying on the hot pursuit doctrine.
II
¶ 25 We begin by setting forth the applicable standard of review.
¶ 26 "Our review of an order granting or denying a motion to suppress evidence presents a question of constitutional fact." State v. Robinson, 2010 WI 80, ¶ 22, 327 Wis. 2d 302, 786 N.W.2d 463 ; see also State v. Iverson, 2015 WI 101, ¶ 17, 365 Wis. 2d 302, 871 N.W.2d 661 (quoting Robinson ).
*100 ¶ 27 "When presented with a question of constitutional fact, this court engages in a two-step inquiry. First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous. Second, we independently apply constitutional principles to those facts." Robinson, 327 Wis. 2d 302, ¶ 22, 786 N.W.2d 463 (citations omitted); see also Iverson, 365 Wis. 2d 302, ¶ 18, 871 N.W.2d 661 ; State v. Hogan, 2015 WI 76, ¶ 32, 364 Wis. 2d 167, 868 N.W.2d 124.
III
¶ 28 For purposes of this review, no dispute exists about the historical facts. No party argues (and we do not conclude) that any of the circuit court's findings of fact based on the testimony are clearly erroneous. Therefore, we apply the relevant constitutional principles to the historical facts.
*180 ¶ 29 The relevant constitutional principles are set forth in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).
¶ 30 The United States Supreme Court declared in Payton that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton, 445 U.S. at 603, 100 S.Ct. 1371.
¶ 31 The Supreme Court has further explained Payton, stating that the Payton Court "recognized that an arrest warrant alone was sufficient to authorize the entry into a person's home to effect his arrest.... Because an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person's privacy *101 interest when it is necessary to arrest him in his home." Steagald v. United States, 451 U.S. 204, 214 n.7, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981).
¶ 32 Under Payton, police may enter a residence pursuant to an arrest warrant if two factors are present: "(1) the facts and circumstances present the police with a reasonable belief that the subject of the arrest warrant resides in the home; and (2) the facts and circumstances present the police with a reasonable belief that the subject of the arrest warrant is present in the home at the time entry is effected." State v. Blanco, 2000 WI App 119, ¶ 16, 237 Wis. 2d 395, 614 N.W.2d 512.
¶ 33 The federal circuit courts are divided regarding what Payton meant by a "reasonable belief." See United States v. Hill, 649 F.3d 258, 262-63 (4th Cir. 2011) (noting that some circuits have equated "reasonable belief" with "probable cause" while others have concluded that "reasonable belief" means something less stringent than "probable cause").
¶ 34 We need not (and do not) decide today whether "reasonable belief" means "probable cause" or something less stringent because, in the instant case, the officers had probable cause to believe that the defendant resided in the duplex into which he fled.[4]
*102 ¶ 35 We have explained that "probable cause eschews technicality and legalisms in favor of a flexible, common-sense measure of the plausibility of particular conclusions about human behavior." State v. Kiper, 193 Wis. 2d 69, 83, 532 N.W.2d 698 (1995) (internal quotation marks and quoted source omitted). For probable cause to exist, "[t]he quantum of evidence must constitute 'more than a possibility or suspicion that defendant committed an offense, but the evidence need not reach the level of proof beyond a reasonable doubt or even that guilt is more likely than not. The information which constitutes probable cause is measured by the facts of the particular case.' " Id. at 82, 532 N.W.2d 698 (quoting State v. Mitchell, 167 Wis. 2d 672, 681-82, 482 N.W.2d 364 (1992) ).
¶ 36 The first factor, whether the police had probable cause to believe that the defendant resided in the home, is at issue in the instant case.[5] The defendant *181 argues that the police officers in the instant case did not have probable cause to believe that he was the subject of the arrest warrants (i.e., that the fleeing man was Steven Delap) or that he resided in the dwelling into which he fled. We are not persuaded by the defendant's arguments.
¶ 37 The following facts known to the police officers support a finding of probable cause to believe that the fleeing individual was Steven Delap and that the individual resided in the dwelling into which he fled:
• Steven Delap had two outstanding warrants for his arrest: one from Jefferson County and one from the Wisconsin Department of Corrections.
*103 • Steven Delap had a prior history of fleeing from police officers.
• Approximately one month prior to the defendant's arrest, Sergeant Willmann overheard that Steven Delap had fled a traffic stop conducted by one of his colleagues, and that a passenger in the vehicle said that Steven Delap lived at 110 Milwaukee Street in Neosho.
• Approximately one week prior to the defendant's arrest, Sergeant Willmann received a teletype correspondence from the Walworth County Sheriff's Office stating that Steven Delap was again involved in fleeing a traffic stop. The teletype indicated that Steven Delap lived at 110 Milwaukee Street.
• As he and Deputy Waas walked down Milwaukee Street, Sergeant Willmann counted down the numbers on the houses. When he reached number 120, there was only one other building on the 100 block of Milwaukee Street: a duplex that Sergeant Willmann deduced must include 110 Milwaukee Street.
• As Sergeant Willmann and Deputy Waas approached the duplex, a man who was walking down the driveway noticed the officers, turned around, and began running towards the back of the duplex. Sergeant Willmann was in full uniform when the man noticed the officers and fled. Sergeant Willmann shined his flashlight on the man and shouted, "Stop, police!" but the man continued running towards the back of the duplex.
¶ 38 Taken together, the facts and circumstances presented to Sergeant Willmann and Deputy Waas establish probable cause to believe that the man in the driveway of 110 Milwaukee Street who turned and ran after noticing the police officers was Steven *104 Delap, the subject of the arrest warrants who had a prior history of fleeing police and who was believed to reside at 110 Milwaukee Street.
¶ 39 The defendant offers two other arguments, both of which are undeveloped and perplexing.
¶ 40 The defendant contends, without explanation, that the officers did not know that the outstanding arrest warrants were supported by probable cause as determined by a neutral magistrate. Arrest warrants must be supported by probable cause.[6] The language of Payton requires *182 only a valid arrest warrant, a reasonable belief that the subject of the warrant resides in a particular dwelling, and a reasonable belief that the subject of the warrant will be present in the dwelling at the time of entry. Payton, 445 U.S. at 603, 100 S.Ct. 1371. Payton does not require the specific arresting officers to also have personal knowledge regarding the issuance of the arrest warrant. The defendant does not argue or contend that the two warrants issued for his arrest in the instant case lacked probable cause, only that Sergeant Willmann and Deputy Waas did not have personal knowledge regarding the issuance of the two warrants. Accordingly, we reject the defendant's argument.
¶ 41 The defendant also asserts that even if the officers' entry into his home was permissible under Payton, his arrest was nonetheless unreasonable because *105 of the officers' use of force and display of weapons. The defendant fails to explain how the police officers' use of force in the instant case overrides the officers' authority to enter the home to execute the two valid outstanding arrest warrants or how the use of force in the instant case was unreasonable.
¶ 42 Applying Payton to the undisputed facts, we conclude that the police officers' entry into the defendant's home to execute two valid warrants for the defendant's arrest was permissible. We therefore affirm the decision of the court of appeals affirming the defendant's judgment of conviction.
By the Court. -The decision of the court of appeals is affirmed.

State v. Delap, No. 2016AP2196-CR, unpublished slip op., 2017 WL 1407571 (Wis. Ct. App. Apr. 20, 2017). The case was decided by one judge pursuant to Wis. Stat. § 752.31(2)(f) (2015-16). All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

We note that although the circuit court and court of appeals did not rely on Payton, the parties briefed and argued the application of Payton to the facts of the instant case while in this court.

Because we affirm the decision of the court of appeals under the Supreme Court's decision in Payton, we need not (and do not) address the issue of whether the hot pursuit doctrine permitted the law enforcement officers in the instant case to follow the defendant into his home to effectuate his arrest.

Moreover, this issue was not briefed or argued by the parties in the instant case. Because the resolution of this issue is unnecessary to the resolution of the instant case, we leave for another day the meaning of Payton's "reasonable belief" language. See Jamerson v. Dep't of Children & Families, 2013 WI 7, ¶ 57, 345 Wis. 2d 205, 824 N.W.2d 822 ; Pool v. City of Sheboygan, 2007 WI 38, ¶ 19, 300 Wis. 2d 74, 729 N.W.2d 415.

The second factor is not at issue. No one disputes that the police had probable cause to believe that the defendant was present in the dwelling at the time of the officers' entry.

State v. Ritchie, 2000 WI App 136, ¶ 12, 237 Wis. 2d 664, 614 N.W.2d 837 (quoting Wayne R. LaFave, Search and Seizure § 5.1(g), at 50 (3d ed. 1996) ):
The requirement of the Fourth Amendment that no warrant shall issue, but upon probable cause, supported by oath or affirmation and particularly describing the person or things to be seized, applies to arrest warrants as well as search warrants, and thus much of what [is] said ... with respect to the issuance of search warrants applies by analogy to arrest warrants.