COURT OF APPEALS
DECISION
DATED AND FILED

July 16, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP72-CR**

Cir. Ct. No. 2009CF5753

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ADRIAN J. JACKSON,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: DAVID C. SWANSON, Judge. *Affirmed*.

Before Brash, P.J., Kessler and Brennan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Adrian J. Jackson appeals a judgment entered upon his guilty plea to possession of more than forty grams of cocaine with intent to deliver, as a party to a crime.  He claims that the circuit court should have suppressed the evidence against him.  He argues that the police unlawfully relied on a warrant for his arrest as authority to enter a third party's home, but that the police could not lawfully enter the home without a search warrant.  Because we conclude that the warrant for Jackson's arrest permitted police to enter the third party's home to arrest Jackson, we affirm.

## Background

¶2     The record reflects that in early December 2009, a warrant was issued to arrest Jackson in connection with a sexual assault.[1]  The warrant included an address on North 21st Street, in Milwaukee, Wisconsin.  On December 9, 2009, police seeking to execute the warrant went to the residence at that address.  Jackson's family members were present at the residence.  They told the officers that Jackson did not live in the residence and permitted the officers to search for him there.  The search proved fruitless.

¶3     Police also had information that Jackson was using a specific cell phone number, and the officers used cell-tracking technology to locate the cell phone inside Apartment 102 of a Milwaukee apartment building on West Atkinson Avenue.  Shortly before 2:30 a.m. on December 10, 2009, a team of officers with the Fugitive Apprehension Unit, each carrying a photograph of Jackson, arrived at

---

[1] Circuit court proceedings in this matter included several suppression hearings and a trial that ended with the declaration of a mistrial following a day of jury deliberations.  We take the facts from our review of the entirety of those proceedings.  *See State v. Gaines*, 197 Wis. 2d 102, 106 n.1, 539 N.W.2d 723 (Ct. App. 1995).

the Atkinson Avenue building. One of the officers went to the side of the building and noted that, although the window blinds of the apartment were drawn, he could see that a television was on and lights were lit inside the apartment. The officer knocked on the window and saw shadows moving but no one responded to the knock.

¶4 Officers next knocked on the front door of the apartment, and a woman subsequently identified as Nicole Tremain opened the door in response. One of the officers showed her Jackson's picture and asked if Jackson was inside. She said that no one "should be" in the apartment except her nine-year-old daughter. The officer thought the answer was couched in a deceptive manner, and another member of the unit shouted for Jackson to show himself. Moments later, officers saw an adult male who looked like Jackson emerging from the back of the apartment with his hands up. The officers entered the apartment and arrested him.

¶5 Tremain told police that she lived in the apartment, and one of the officers obtained her consent to search her home. The search uncovered, among other things, a quantity of cocaine and marijuana. The State charged Jackson with one count of possessing more than forty grams of cocaine with intent to deliver and one count of possessing more than 200 grams but less than 1000 grams of tetrahydrocannabinols with intent to deliver, all as a party to a crime.

¶6 Jackson moved to suppress the evidence found in the Atkinson Avenue apartment, arguing that he was a guest in Tremain's home and the police therefore needed a search warrant in order to enter the home to arrest him. In a series of hearings, the circuit court rejected the argument, finding that Jackson was

an overnight guest in the apartment but concluding that the arrest warrant permitted police to enter and arrest him.[2]

¶7 In due course, Jackson pled guilty to the cocaine offense and the circuit court dismissed the remaining charge. Jackson appeals, renewing his contention that the police could not enter Tremain's apartment to arrest him absent a search warrant.

## Discussion

¶8 Review of an order denying suppression of evidence presents a question of constitutional fact. *See State v. Delap*, 2018 WI 64, ¶26, 382 Wis. 2d 92, 913 N.W.2d 175. Such a question involves a two-step inquiry. *See id.*, ¶27. We uphold the circuit court's findings of historical fact unless they are clearly erroneous, and "we independently apply constitutional principles to those facts." *See id.* (citation omitted). No material facts are contested here. Accordingly, we are presented only with questions of law for our *de novo* review. *See id.*, ¶28.

¶9 The Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution generally require that the government conduct searches and seizures pursuant to a warrant. *See State v. Callaway*, 106 Wis. 2d 503, 507, 317 N.W.2d 428 (1982). Wisconsin courts normally interpret the search and seizure provision of the Wisconsin Constitution consistently with

---

[2] A predecessor circuit court concluded that Jackson lacked standing to challenge the search of Tremain's apartment because he was an overnight guest and was engaged in illegal activity there. In an earlier appeal, we reversed and remanded for a new suppression hearing, holding that Jackson's status as an overnight guest in the apartment gave him standing to bring his suppression motion. *See State v. Jackson*, No. 2013AP592-CR, unpublished slip op., ¶¶4, 8 (WI App Mar. 25, 2014).

the United States Supreme Court's interpretation of the Fourth Amendment. *See State v. Pinder*, 2018 WI 106, ¶45 n.19, 384 Wis. 2d 416, 919 N.W.2d 568.

¶10    Absent an applicable exception, police must have a search warrant to enter a private residence. *See State v. Artic*, 2010 WI 83, ¶94, 327 Wis. 2d 392, 786 N.W.2d 430. One exception is set forth in *Payton v. New York*, 445 U.S. 573, 603 (1980): "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."

¶11    In *State v. Blanco*, 2000 WI App 119, 237 Wis. 2d 395, 614 N.W.2d 512, we considered a broad survey of federal court decisions and concluded that *Payton* allows law enforcement officers to enter a home solely on the authority of an arrest warrant if two conditions are met:

> (1) the facts and circumstances present the police with a reasonable belief that the subject of the arrest warrant resides in the home; and (2) the facts and circumstances present the police with a reasonable belief that the subject of the arrest warrant is present in the home at the time entry is effected.

*See Blanco*, 237 Wis. 2d 395, ¶¶15-16. The supreme court agreed with and adopted our interpretation of *Payton* in *Delap*. *See id.*, 382 Wis. 2d 92, ¶32.

¶12    Jackson does not dispute that police reasonably believed he was in the Atkinson Avenue apartment when they entered it on December 10, 2009. He contends, however, that *Blanco* did not permit the entry because, he says, the facts here did not give rise to a reasonable belief that he lived in the apartment.

¶13    We begin our substantive discussion with two preliminary matters. First, Jackson asserts that this appeal "centers on ... whether Mr. Jackson was

5

residing" in the Atkinson Avenue apartment when police executed the arrest warrant. We disagree. As our supreme court confirmed in **Delap**, the central question underlying the first **Blanco** requirement is not where the suspect lived but whether the facts and circumstances support a reasonable belief that the suspect resided in the home where police executed the warrant. *See* **Delap**, 382 Wis. 2d 92, ¶¶32, 40.

¶14    Second, our supreme court has not yet decided "whether 'reasonable belief' in the context of a residential entry means 'probable cause' or something less stringent." *See* ***id.***, ¶34. Instead, the supreme court elected to proceed in **Delap** as if probable cause were the standard. *See* ***id.*** We do so as well.

¶15    Accordingly, we turn to the question of whether the facts and circumstances presented the police with probable cause to believe that Jackson lived in the Atkinson Avenue apartment. "For probable cause to exist, the quantum of evidence must constitute more than a possibility or suspicion ... but the evidence need not reach the level of proof beyond a reasonable doubt or even that [the fact at issue] is more likely than not." ***Id.***, ¶35 (citations and brackets omitted). Rather, probable cause measures "the plausibility of particular conclusions about human behavior." *See* ***id.*** (citation omitted). Whether the facts constitute probable cause is a question of law for our *de novo* review. *See* **State v. Goss**, 2011 WI 104, ¶9, 338 Wis. 2d 72, 806 N.W.2d 918.

¶16    Jackson supports his theory that the police lacked probable cause to believe he lived in the Atkinson Avenue apartment by emphasizing the differences in the facts underlying this case and those underlying **Blanco** and **Delap**, cases in which Wisconsin courts permitted police entry into a residence based on the authority of an arrest warrant. We are not persuaded. "The information which

6

constitutes probable cause is measured by the facts of the particular case." ***Delap***, 382 Wis. 2d 92, ¶35 (citations omitted). Moreover, while the facts here are, of course, not identical to those in any other case, the quantity and quality of information available to the arresting officers in ***Blanco*** was quite similar to and in some respects weaker than the information available here.

¶17 First, the facts described in ***Blanco*** reflect law enforcement's determination that the suspect was not present at the address on the arrest warrant. *See id*, 237 Wis. 2d 395, ¶¶9, 17. Here, by contrast, police determined through inquiry and a search that Jackson in fact did not live at the address on the warrant. The police therefore could reasonably believe that Jackson lived somewhere else. Second, the police in ***Blanco*** received a tip that the suspect was "staying" at the apartment building where he was found and then received further information that he had been seen smoking there and going inside an apartment shortly before the police arrived. *See **id.*** This evidence of the suspect's location was no better than the cell-tracking technology that showed the location of Jackson's cell phone inside a specific apartment. As Jackson admits: "[i]t is the person who is not carrying a cell phone, with all that it contains, who is the exception." *See **Riley v. California***, 573 U.S. 373, 395 (2014). Finally, in ***Blanco***, police located the suspect in a residential apartment early in the evening. *See **id.***, 237 Wis. 2d 395, ¶3. By contrast, police in this case found Jackson at the Atkinson Avenue apartment at 2:30 a.m., which is not an ordinary time for a social call. *Cf. **United States v. Thomas***, 429 F.3d 282, 286 (D.C. Cir. 2005) (early morning hour is "reason enough" to believe suspect is at home).

¶18 Further, in light of facts similar in numerous ways to the facts here, another jurisdiction concluded that police reasonably believed that the subject of an arrest warrant resided in the home where the officers took him into custody.

7

*See United States v. Stewart*, 102 F. Supp. 3d 392, 398-99 (D.R.I., 2015). There, officers obtained both an arrest warrant for a suspect and a warrant to track the suspect's cell phone. *See id.* at 396. An officer tracked the phone to a specific location and saw the suspect get into a car, but lost it in traffic. *See id.* At noon the next day, officers again observed the car in which the suspect had been riding. *See id.* It was parked at a different location, in front of an apartment associated with someone other than the suspect. *See id.* Cell phone data, however, showed that the suspect's phone was in the apartment. *See id.* Officers knocked on the apartment doors. No one answered but an officer saw a curtain move, indicating that someone was inside. *See id.* at 398-99. When officers continued to receive no response, they forced entry into the apartment and found the suspect. *See id.* at 396. The *Stewart* court held that the entry was lawful because the totality of the evidence created a reasonable belief that the suspect both resided at the apartment and was present there when the officers entered. *See id.* at 399.

¶19    So too here. The officers eliminated the possibility that Jackson lived at the residence described on the arrest warrant by searching for him at that residence and speaking to his family. Using cell-tracking technology, police then located his phone in another residence, where officers observed signs that someone was inside. The woman who opened the door in response to the officers behaved suspiciously, and her statement that only a nine-year-old girl "should be" in the residence was immediately disproved when an adult male who looked like Jackson materialized with his hands up in response to his name. Moreover, unlike *Stewart*, where police tracked their suspect to a third party's residence in the middle of the afternoon, the officers here determined that Jackson was inside a specific apartment at 2:30 a.m., a time of day that contributes to the likelihood that a person is at home. *See Thomas*, 429 F.3d at 286. Accordingly, we are satisfied

8

that the facts supported a reasonable belief not only that Jackson was in the Atkinson Avenue apartment when police executed the arrest warrant but also that he resided there.

¶20    Last, we reject the contention that Jackson is entitled to relief under **Steagald v. United States**, 451 U.S. 204 (1981).  According to Jackson, **Steagald** "addressed whether police could rely on an arrest warrant to search the house of a third party" and held that "police needed to obtain a search warrant; they could not rely on the arrest warrant to enter the residence."  We do not agree with Jackson's broad reading of **Steagald**.   That case presented a "narrow issue," namely, "whether an arrest warrant—as opposed to a search warrant—is adequate to protect the Fourth Amendment interests of persons not named in the warrant, when their homes are searched."  *Id.* at 211.  The Supreme Court in **Steagald** resolved the issue by establishing that the resident of a home may claim a Fourth Amendment violation if law enforcement enters that home without a search warrant in order to execute an arrest warrant for someone else.  *See id.* at 216, 220-22.

¶21    Here, however, police had an arrest warrant for Jackson, the person whose Fourth Amendment interests are at stake.  **Steagald** did not hold that such a person could successfully challenge law enforcement's entry into someone else's residence to execute the arrest warrant.  Indeed, the **Steagald** court expressly stated that the issue presented was "*not* whether the subject of an arrest warrant can object to the absence of a search warrant when he is apprehended in another person's home, but rather whether the residents of that home can complain of the search."  *See id.* at 219 (emphasis added); *see also* **United States v. Bohannon**, 824 F.3d 242, 250-51 (2nd Cir. 2016) (joining eight other federal circuits in concluding that "the subject of an arrest warrant, apprehended in a third party's

residence, may not invoke *Steagald* to claim that his Fourth Amendment rights were violated because entry into the residence was not authorized by a search warrant").

¶22    Accordingly, *Steagald* does not aid Jackson.  Instead, we apply the principle that police may execute an arrest warrant in a home when they reasonably believe that the subject of the warrant is a resident of the home and is inside at the time of police entry.  *See* ***Delap***, 382 Wis. 2d 92, ¶32.  Because police in this case had a warrant for Jackson's arrest and because the facts supported a reasonable belief that Jackson lived at and was inside the Atkinson Avenue apartment when the officers entered, the entry was lawful.  *See* ***id.***  We affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).