COURT OF APPEALS
DECISION
DATED AND FILED

February 6, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1885-CR**

Cir. Ct. No. **2017CT145**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JUSTIN T. KANE,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Iowa County: MARGARET MARY KOEHLER, Judge. *Affirmed and cause remanded with directions.*

¶1 FITZPATRICK, P.J.[1] Justin Kane appeals an order of the Iowa County Circuit Court denying his motion to suppress the results of blood alcohol

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

testing. Kane, who was arrested for operating a motor vehicle while under the influence of an intoxicant (OWI), third offense, consented to the taking of a sample of his blood for the purpose of determining his blood alcohol concentration. Before the Wisconsin State Laboratory of Hygiene tested the sample, Kane sent a letter to the laboratory in an attempt to revoke his consent to test the sample. The first question before this court is whether the testing of Kane's blood violated his Fourth Amendment right to be free from an unreasonable search. This is the same question recently addressed by our supreme court in *State v. Randall*, 2019 WI 80, 387 Wis. 2d 744, 930 N.W.2d 223. I conclude that the *Randall* decision controls here and requires the conclusion that the testing of Kane's blood was not unconstitutional. The second question before this court is whether Kane's consent to the blood draw was voluntary. I conclude that Kane's consent was voluntary under the totality of circumstances. Accordingly, I affirm the circuit court's order.

**BACKGROUND**

¶2 The following facts are undisputed on appeal.

¶3 On October 24, 2017, Kane was arrested for OWI, third offense. Kane was handcuffed with his hands behind his back and was placed in the back seat of the arresting officer's squad car. While Kane was in the squad car, the arresting officer read Kane the Informing the Accused form, and Kane was asked if he would consent to a blood test. Kane stated in response: "I don't believe I have a choice. Yes." Kane was then transported to a hospital where a sample of his blood was drawn, and the arresting officer sent the sample to the Wisconsin State Laboratory of Hygiene for testing.

¶4     Kane's attorney sent a letter, dated October 30, 2017, to the State Laboratory indicating that Kane "revokes any previous consent that he may have provided to the collection and analysis of his blood."  On November 8, 2017, the State Laboratory tested Kane's blood sample.  The State Laboratory's test showed that Kane's blood sample had an alcohol concentration of .188 g/100 mL.

¶5     Kane was charged with OWI, third offense, and operating a motor vehicle with a prohibited alcohol concentration, third offense.  Kane requested that the circuit court suppress the results of the blood test on the ground that the testing of his blood, after he purportedly withdrew consent, violated his rights under the Fourth Amendment of the U.S. Constitution.  Kane also argued that the results of his blood test should be suppressed because his consent to the blood test was not voluntary and was, thus, invalid.  The circuit court denied Kane's motion.

¶6     Following the denial of Kane's motion to suppress, Kane pleaded guilty to OWI, third offense.  This appeal follows.

¶7     I mention other material facts in the discussion that follows.

**DISCUSSION**

¶8     Kane argues that the circuit court erred in concluding, first, that the testing of Kane's blood after Kane attempted to withdraw his consent was not an unconstitutional warrantless search and, second, that Kane's consent to the testing of his blood was voluntary.  For reasons that follow, I reject Kane's arguments and affirm the order of the circuit court.

## I.  Standard of Review.

¶9    This court's review of an order granting or denying a motion to suppress presents a question of constitutional fact.  *State v. Delap*, 2018 WI 64, ¶26, 382 Wis. 2d 92, 913 N.W.2d 175.   When reviewing a question of constitutional fact, this court engages in a two-step inquiry.  *Id.*, ¶27.  First, this court reviews the circuit court's factual findings under a deferential standard, upholding those unless clearly erroneous.  *Id.*  A circuit court's factual findings are not clearly erroneous if those are supported by any credible evidence in the record, or any reasonable inferences from that evidence.  *See Insurance Co. of N. Am. v. DEC Int'l, Inc.*, 220 Wis. 2d 840, 845, 586 N.W.2d 691 (Ct. App. 1998). Second, this court independently applies the constitutional principles to those facts.  *Delap*, 382 Wis. 2d 92, ¶27.

## II.  The Testing of Kane's Blood Was Not an Unconstitutional Warrantless Search.

¶10    In *Randall*, our supreme court addressed whether the testing of a blood sample after a defendant attempted to revoke consent previously given to test the sample was an unconstitutional warrantless search because the only possible justification for the testing was the defendant's consent, which was purportedly withdrawn before the blood sample was tested.  *Randall*, 387 Wis. 2d 744, ¶¶1, 5, 8, 11, 14-16.  A lead opinion, joined by one justice, a concurring opinion, joined by two justices, and a dissenting opinion were issued by our supreme court.  *See id.*, ¶40-41.  The lead and concurring opinions agreed that Randall's withdrawal of consent to test her blood did not affect the constitutionality of the testing of the blood for the presence of alcohol.  *See id.*, ¶¶1 n.1, 36-38; *id.*, ¶¶41-42 (Roggensack, C.J., concurring).

¶11 Kane argues that the "precedential value [of **Randall**] is curtailed" and that it would be "incorrect to fully rely on **Randall**" in this case because the supreme court's decision was "fractured" and "[t]here was no agreement as to the legal basis upon which … Randall's consent could not be withdrawn." I rejected the identical argument in **State v. Lane**, No. 2019AP153-CR, unpublished slip op. (Oct. 17, 2019). In fact, in **Lane**, that defendant filed a brief which contains arguments on this issue that are nearly word-for-word identical to the arguments set forth in Kane's brief-in-chief in this appeal. Unsurprisingly, I find my reasoning in **Lane** persuasive and adopt it here:

> Both the lead and concurring opinions in **Randall** agree that a defendant who has been arrested for intoxicated driving, and whose blood is drawn after the defendant's consent, does not have a reasonable expectation of privacy in the alcohol content of the blood. *See* [**Randall**, 387 Wis. 2d 744], ¶39 n.14; *id.*, ¶¶41-42 (Roggensack, C.J., concurring). The lead and concurring opinions also agree that, under those circumstances, a defendant's withdrawal of consent has no affect on the constitutionality of the testing of the blood drawn for the presence of alcohol. *See id.*, ¶¶1 n.1, 36-38; *id.*, ¶¶41-42 (Roggensack, C.J., concurring); *see also* **State v. Ayotte**, unpublished slip op. No. 18AP839, ¶8 (WI App July 25, 2019) (concluding that the lead and concurring opinions in Randall agree on this point). A majority of the participating justices joined the lead and concurring opinions in **Randall**. When "a majority of the participating judges ... agree[ ] on a particular point ... [that point is] considered the opinion of the court." **State v. Elam**, 195 Wis. 2d 683, 685, 538 N.W.2d 249 (1995). Thus, I am bound by the lead and concurring opinions' agreed conclusion that testing a blood sample taken from a defendant who consented to the blood draw and is arrested for OWI, after the defendant withdraws consent, does not implicate Fourth Amendment protections. *See* **Cook v. Cook**, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

*Lane*, No. 2019AP153-CR, ¶9 (footnote omitted).

¶12 Kane argues that, if the lead and concurring opinions in ***Randall*** establish binding precedent, that precedent is not controlling in this case because the facts are distinguishable from those in ***Randall***. Kane asserts that, unlike the defendant in ***Randall***, who "clear[ly], [and] unequivocal[ly] ... consent[ed]," Kane "did not readily agree to the blood test." This argument is, again, nearly word-for-word identical to an argument made by the defendant in ***Lane***. That argument was rejected by me. For the same reasons specified in ***Lane***, and as are discussed below, I reject Kane's argument. *See **id.***, ¶11.[2]

## III. Kane's Consent Was Voluntary.

¶13 Kane next contends that the circuit court erred in concluding that his consent to the testing of his blood sample was voluntary under the totality of the circumstances. Below, I set forth the legal principles that govern a defendant's consent to a warrantless search and the circuit court's relevant factual findings. With those principles and findings in mind, I then address Kane's arguments.

### A. Principles Regarding Consent to a Warrantless Search.

¶14 "Warrantless searches are per se unreasonable, subject to several clearly delineated exceptions." ***State v. Artic***, 2010 WI 83, ¶29, 327 Wis. 2d 392, 786 N.W.2d 430. One such exception to the warrant requirement is a search conducted pursuant to consent. ***Id.*** In order for the consent exception to be

---

[2] Moreover, Kane does not point out why the purported differences between the facts of ***State v. Randall***, 2019 WI 80, 387 Wis. 2d 744, 930 N.W.2d 223, and this case matter to the result. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 933 (Ct. App. 1992) (stating that this court will not decide undeveloped legal arguments).

satisfied, consent must be given "by words, gestures, or conduct," and the consent must have been voluntary. *Id.*, ¶30.

¶15 The State bears the burden of proving by clear and convincing evidence that consent was given voluntarily. *Id.*, ¶32; *see also* **State v. Johnson**, 2007 WI 32, ¶16, 299 Wis. 2d 675, 729 N.W.2d 182. A defendant's consent is voluntary if the defendant's response was "'an essentially free and unconstrained choice,' not 'the product of duress or coercion, express or implied.'" **Artic**, 327 Wis. 2d 392, ¶32 (quoted source omitted). Mere acquiescence by a defendant "to an unlawful assertion of police authority is not equivalent to consent." **Johnson**, 299 Wis. 2d 675, ¶16 (quoted source omitted).

¶16 Whether a defendant's consent was voluntary presents a mixed question of fact and law "based upon an evaluation of 'the totality of all the surrounding circumstances,'" considering both the circumstances surrounding the consent and the characteristics of the defendant. **Artic**, 327 Wis. 2d 392, ¶32 (quoted source omitted). In those two steps, this court considers the circuit court's findings of fact under the clearly erroneous standard but applies constitutional standards to those facts de novo. **State v. Vorburger**, 2002 WI 105, ¶88, 255 Wis. 2d 537, 648 N.W.2d 829.

¶17 Our supreme court has set forth the following non-exhaustive list of factors to be considered to determine whether a defendant's consent was given voluntarily:

> (1) whether the police used deception, trickery, or misrepresentation in their dialogue with the defendant to persuade him [or her] to consent; (2) whether the police threatened or physically intimidated the defendant or "punished" him [or her] by the deprivation of something like food or sleep; (3) whether the conditions attending the request to search were congenial, non-threatening, and

> cooperative, or the opposite; (4) how the defendant responded to the request to search; (5) what characteristics the defendant had as to age, intelligence, education, physical and emotional condition, and prior experience with the police; and (6) whether the police informed the defendant that he could refuse consent.

*Artic*, 327 Wis. 2d 392, ¶33 (citing *State v. Phillips*, 218 Wis. 2d 180, 198-203, 577 N.W.2d 794 (1998)). Again, consent is determined based upon a consideration of the totality of the circumstances; "no single factor controls." *Id.*, ¶¶32-33.

### B. The Circuit Court's Relevant Findings of Fact.

¶18 At the hearing on Kane's motion to suppress, testimony was given by the arresting officer, and the circuit court viewed a video recording of the arresting officer's interaction with Kane. That video is not part of the record on appeal.[3] *See Fischer v. Wisconsin Patients Comp. Fund*, 2002 WI App 192, ¶6 n.4, 256 Wis. 2d 848, 650 N.W.2d 75 (stating that, in the absence of a complete record, we will assume "that every fact essential to sustain the [circuit] court's decision is supported by the record"). The court circuit considered the *Artic* factors in light of the arresting officer's testimony and the video, and made the following relevant findings:

- As to factor (1), the court found that police did not use deception, trickery, or misrepresentation to persuade Kane to consent.

---

[3] After a diligent search, there is no indication that the video recording is part of the record on appeal. To confirm the point, neither party provides a record citation for the video in their briefs.

- As to factor (2), the court found that police did not threaten, physically intimidate, or punish Kane with the use of sleep or food deprivation.

- As to factor (3), the court found that the video "clearly show[ed]" that the arresting officer and Kane "were congenial," that Kane's and the arresting officer's interaction was "friendly, nonthreatening, [and] chatty," and that that their conversation was "cooperative." The court found that "Kane … kept apologizing," that Kane "thank[ed]" the arresting officer "from time to time," and that Kane stated to the officer that "he was embarrassed by the situation."

- As to factor (4), the court found that the arresting officer asked Kane "if he would submit to a blood test" and Kane said, "Under those circumstances, I don't believe I have a choice. Yes."

- As to factor (5), the court found that Kane's arrest was for his third OWI offense, that Kane had prior experience with OWI arrest procedures, and that Kane "appeared to know what the routine was going to be." The court further found that Kane was handcuffed when he consented to the blood test but that Kane "did not complain about his handcuffs prior to being read the Informing the Accused form."

- As to factor (6), the court found that Kane "was informed" that he could refuse consent.

The circuit court determined that, under the totality of the circumstances as found by the court, Kane's consent "was not an acquiescence," but was instead "freely

9

and voluntarily given and not by a restrained choice or product of any duress or coercion."

## C. Analysis.

¶19    With one exception, Kane does not challenge the circuit court's factual findings but, instead, argues that the facts do not support the conclusion that his consent was voluntary.   The exception is the court's finding under factor (3) that the conditions surrounding Kane's consent were "congenial," "nonthreatening," and "cooperative."   Kane argues that the circuit court's finding in this respect is erroneous because "Kane was in custody, complained of handcuffs,[4] and expressly stated he felt he did not have a choice in submitting to the testing."

¶20    Kane's argument fails for at least the following two reasons.   First, Kane does not explain why the facts pointed to by him render the circuit court's findings as to factor (3) clearly erroneous.   *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (stating that an appellate court may decline to address issues that are inadequately briefed).   Second, the circuit court found that the video of the arresting officer's interaction with Kane showed that Kane and the arresting officer "were having a chatty … [and] cooperative conversation," and that Kane "thank[ed]" the arresting officer more than once.

---

[4] I have reviewed the transcript of the hearing on Kane's motion to suppress and found no testimony in the transcript to support a contention that Kane complained about the handcuffs. However, the circuit court stated: "[A]s [defense counsel] points out, [Kane] did not complain about the handcuffs until after the Informing the Accused [form] was read."  I assume that the video viewed by the circuit court supports the circuit court's finding. *See Fischer v. Wisconsin Patients Comp. Fund*, 2002 WI App 192, ¶6 n.4, 256 Wis. 2d 848, 650 N.W.2d 75 (stating that, in the absence of a complete record, we will assume "that every fact essential to sustain the trial court's decision is supported by the record").

Without the video to review, I must assume that these findings are true. *See Fischer*, 256 Wis. 2d 848, ¶6 n.4. I conclude that those facts support the court's finding that the conditions surrounding Kane's consent were "congenial," "nonthreatening," and "cooperative." Accordingly, I conclude that the circuit court's finding as to factor (3) is not clearly erroneous.

¶21 I now turn to the issue of whether, under the totality of the circumstances as found by the circuit court, Kane's consent was voluntary. Kane makes two primary argument as to why his consent was not voluntary under the totality of the circumstances, both of which I reject.

¶22 Kane argues that his consent was not voluntary because the arresting officer "asked [Kane] if he would *submit*" to the blood draw and not whether Kane would "*consent*" to the blood draw. (Emphasis added.) Relying on *Johnson*, 299 Wis. 2d 675, Kane asserts that the arresting officer used the word "submit," rather than "consent" when discussing the blood test and that the officer's use of the word "submit" rendered Kane's consent "a submission or acquiescence to authority" rather than a voluntary consent.

¶23 In *Johnson*, the defendant was advised by police that the police "were going to search the vehicle." *Id.*, ¶19. The supreme court construed this statement as a command, rather than a question, and concluded that the defendant's "response to that command must consequently be construed as acquiescence." *Id.* Kane admits that his arresting officer *asked* if he would submit to a blood test, rather than commanded that he submit to the test. Thus, any reliance on *Johnson* is misplaced. Additionally, Kane does not point to any legal authority holding that, when a defendant is asked by law enforcement to

11

"submit," as opposed to "consent," the officer's statement is a command rather than a question, and Kane does not argue why it should.

¶24 Kane also argues that his consent was not voluntary under the totality of the circumstances because, at the time he consented, he "was in custody [and] complained of handcuffs." Kane also places emphasis on the fact that Kane stated "I don't believe I have a choice," before answering "yes" to the arresting officer's question if Kane would consent to a blood test. Kane asserts that his statement "express[ed] clear reticence, if not unwillingness to submit."

¶25 In determining the voluntariness of Kane's consent, I do not view the facts pointed to by Kane in isolation. Rather, I must view his consent under the totality of the circumstances.

¶26 For purposes of clarity, I summarize the circuit court's findings which are set forth above. Based on its observation of the video of the arresting officer's interaction with Kane and the arresting officer's testimony, the circuit court found that the arresting officer did not persuade Kane to consent through trickery, deception, misrepresentation, threats, physical intimidation, or punishment. The court found that Kane was apologetic to the arresting officer and that the officer's and Kane's interaction was congenial, friendly, nonthreatening, and cooperative. The court found that Kane stated "yes" when asked by the arresting officer if Kane would submit to a blood test. The court further found that Kane had been arrested for OWI on prior occasions and thus had prior experience with law enforcement in an OWI arrest situation. Finally, the court found that Kane was informed that he could refuse the blood test.

¶27 Weighing the facts as found by the circuit court, against those facts pointed to by Kane, I conclude that under the totality of the circumstances Kane's

consent was voluntary. Kane may have expressed his belief that, by his own actions of drinking alcohol to excess and operating a motor vehicle, he had placed himself in an uncomfortable circumstance. But that, by itself, does not mean that he did not voluntarily consent to the blood test, particularly here where his interaction with the arresting officer was cooperative and congenial, he had been arrested for OWI on two prior occasions, and thus he was experienced with arrest and chemical test procedures, and was informed of his rights.[5]

¶28 The judgment of conviction indicates that Kane pleaded not guilty to the OWI, 3rd offense, when, in fact, he entered a plea of guilty. I remand this case to the circuit court with directions that the circuit court direct the clerk of the court to correct this clerical error.

¶29 In addition, the circuit court granted a stay of Kane's sentence. Therefore, this matter is remanded for further proceedings in the exercise of the circuit court's discretion.

## CONCLUSION

¶30 For the foregoing reasons, the judgment of the circuit court is affirmed.

*By the Court.*—Judgment affirmed and cause remanded with directions.

---

[5] Because my decision that Kane's consent was voluntary is dispositive, I do not address other issues raised by the parties, including the State's argument concerning implied consent. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (stating that if a decision on one point disposes of the appeal, the court will not decide other issues raised).

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.