COURT OF APPEALS
DECISION
DATED AND FILED

August 28, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP1941-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2021CF499**

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

DARREN R. REINER,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Waukesha County: Bridget Schoenborn, Judge. *Affirmed*.

Before Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Darren R. Reiner appeals pro se from a judgment of conviction for operating a motor vehicle with a prohibited alcohol concentration (PAC).[1]   He contends the circuit court erred in denying his motion to suppress evidence from the traffic stop that resulted in the conviction and in how it ruled at trial on matters related to his expert witness.[2]   For the following reasons, we affirm.

## Background

¶2      Following   a   traffic   stop   and   operating   while   intoxicated (OWI)-related  arrest,  Reiner  was  charged  with  multiple  offenses,  including operating a motor vehicle with a PAC, fourth offense.   Reiner filed a suppression motion, and the circuit court held an evidentiary hearing.   The arresting City of Brookfield police officer was the only witness to testify at the hearing, and his relevant testimony is as follows.

¶3      Using radar, the officer clocked Reiner traveling eleven miles over the speed limit at approximately 11:21 p.m. on Friday, March 26, 2021.   The officer positioned his squad car behind Reiner's vehicle and activated his emergency lights and spotlight, and sporadically activated his siren, but Reiner continued traveling for "a significant distance," despite numerous reasonable locations to pull over.   The officer observed Reiner adjust his mirror and look back at the officer through the mirror multiple times.   Reiner entered onto the freeway, southbound I-41, prompting the officer to fully activate his siren with continuous sound.   After Reiner eventually

---

[1] He was also convicted of failure to install an ignition interlock device, but he does not appeal that conviction.

[2] Reiner very briefly touches upon several other issues but fails to sufficiently develop an argument as to any of them.   To the extent we do not address an argument raised by Reiner on appeal, the argument is deemed rejected.   *See State v. Waste Mgmt. of Wis., Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978); *see also Clean Wis., Inc. v. PSC*, 2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments.").

pulled over, the officer observed him "reaching around inside the vehicle bending over like reaching around under the seats[,] … running his hands through his hair[, and] … cup[ping] his hand and put[ting] it over his mouth." The officer considered this to be "nervous behavior or behavior consistent with someone who is driving while impaired," and the officer agreed it appeared as if Reiner was "maybe smelling his breath."

¶4 The officer approached the passenger side window, and when Reiner rolled it down, the officer "immediately smelled a strong odor … of intoxicants." Reiner's eyes were glassy and bloodshot, and his speech was slurred. The officer asked Reiner if he had had anything to drink, and Reiner stated he had not.

¶5 The officer ran a check on Reiner, which indicated he had three prior OWIs and was subject to a .02 blood alcohol content restriction. The officer agreed that "a person with [a] [.]02 restriction would not need to drink very much before they are violating the law," and specifically testified that through his training and experience, he had learned that "not factoring in other circumstances," the "average male" would be approximately at a .02 level after just one alcoholic drink such as a "12 ounce beer." The officer removed Reiner from the vehicle and again asked him how much he had had to drink, and Reiner responded, "[N]othing." The officer again testified that he "did smell the odor of intoxicants on him."

¶6 The officer administered field sobriety tests to Reiner, observing six out of six clues of impairment on the horizontal gaze nystagmus test. In addition, as the officer was administering this test to Reiner, Reiner turned his head and thus was not keeping his head facing forward as the officer had instructed. In the officer's experience with individuals who have multiple prior OWIs, such a turning of the head "side to side" is an effort by the subject to manipulate the test so the

officer "can't observe their eyes at the maximum deviation or while I am conducting the test." The officer further testified that there were "[m]ultiple times where [Reiner] was squinting his eyes so it was almost hard to see the pupil as I was conducting the passes." As a result, the officer performed "more passes than are required" for the HGN test.

¶7 On the walk-and-turn test, Reiner exhibited two out of eight possible clues of impairment, and on the one-legged-stand test, he exhibited three out of four such clues. The officer then asked Reiner to submit to a preliminary breath test (PBT), but Reiner refused. The officer then arrested Reiner, beginning the criminal proceedings in this case. The circuit court implicitly found the officer's testimony credible, and it denied Reiner's suppression motion.

¶8 Reiner's case proceeded to trial, and a jury found him guilty of operating with a PAC, fourth offense and failure to install an ignition interlock device. He was later sentenced, and now appeals, challenging the circuit court's denial of his suppression motion and various rulings the court made related to his expert witness.

*Discussion*

Denial of Suppression Motion

¶9 Reiner claims the circuit court erred in determining the officer had probable cause to request the PBT and probable cause to arrest him and in denying his suppression motion on those bases. We conclude the court did not err.

¶10 "An order granting or denying a motion to suppress evidence presents a question of constitutional fact, which requires a two-step analysis on appellate review." *State v. Meisenhelder*, 2022 WI App 37, ¶7, 404 Wis. 2d 75, 978 N.W.2d

551, *review denied* (WI Oct. 11, 2022) (No. 2021AP708-CR). "First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous. Second, we independently apply constitutional principles to those facts." ***Id.*** (citation omitted). Whether the undisputed facts satisfy the probable cause standard is a question of law we review de novo. ***State v. Delap***, 2018 WI 64, ¶¶27-28, 382 Wis. 2d 92, 913 N.W.2d 175.

¶11 Probable cause is "based on probabilities; and, as a result, the facts faced by the officer 'need only be sufficient to lead a reasonable officer to believe that guilt is more than a possibility,'" ***County of Dane v. Sharpee***, 154 Wis. 2d 515, 518, 453 N.W.2d 508 (Ct. App. 1990) (citation omitted), "but not a probability," ***State v. Tompkins***, 144 Wis. 2d 116, 125, 423 N.W.2d 823 (1988). Our supreme court "has always stressed the reasonableness factor. Is it reasonable to believe in the circumstances that particular evidence or contraband may be located at a place sought to be searched?" ***Id.*** Probable cause is a "practical, common-sense determination" based on the totality of the circumstances. ***State v. Robinson***, 2010 WI 80, ¶27, 327 Wis. 2d 302, 786 N.W.2d 463. "The test is objective: what a reasonable police officer would reasonably believe under the circumstances...." ***State v. Erickson***, 2003 WI App 43, ¶14, 260 Wis. 2d 279, 659 N.W.2d 407 (citation omitted).

¶12 "Probable cause to request a PBT requires 'a quantum of proof that is … less than the level of proof required to establish probable cause for arrest.'" ***State v. Blatterman***, 2015 WI 46, ¶76 n.29, 362 Wis. 2d 138, 864 N.W.2d 26. Here, at the time the officer asked Reiner to submit to a PBT, the officer had far more than the requisite probable cause to make the request.

¶13     In *State v. Goss*, 2011 WI 104, ¶¶17, 26, 338 Wis. 2d 72, 806 N.W.2d 918, our supreme court held that when an officer is aware that a driver is subject to a .02 BAC restriction, "know[s] that even a small amount of alcohol could put a suspect over" that limit, and smells alcohol emanating from the person, the officer has probable cause to request the subject submit to a PBT.  The arresting officer here had knowledge of all of these facts, and much more.

¶14     In addition to "immediately smell[ing] a strong odor … of intoxicants" as soon as Reiner rolled down the *passenger* side window (i.e., the officer smelled the strong odor from several feet away from Reiner), the officer also was aware that Reiner: (1) had been speeding eleven miles over the speed limit (suggesting a lack of attentiveness by Reiner to the posted speed limit); (2) had refused to pull over his vehicle for the officer for "a significant distance" despite the availability of numerous reasonable locations to do so (suggesting consciousness of guilt); (3) after stopping, had "cup[ped] his hand and put it over his mouth" as if attempting to smell his breath (suggesting consciousness of guilt); (4) had glassy and bloodshot eyes and slurred speech (suggesting significant consumption of alcohol); (5) twice denied having consumed any alcohol (suggesting consciousness of guilt); (6) had performed poorly on the field sobriety tests (suggesting significant consumption of alcohol); and (7) appeared to be trying to obstruct the officer's attempt to conduct the HGN test by turning his head and squinting his eyes (suggesting consciousness of guilt).  Armed with all of these facts, the officer not only had sufficient probable cause to request that Reiner submit to a PBT, the officer unquestionably had sufficient probable cause to arrest Reiner, even before requesting the PBT.  But, Reiner gave the officer yet more probable cause for the

arrest by refusing to submit to the PBT (further suggesting consciousness of guilt). Reiner's challenge to the PBT request and arrest falls flat.[3]

Reiner's Expert Witness

¶15     Reiner next claims the circuit court erred in considering the State's mid-trial challenge to his expert; Reiner claims error because the court's scheduling order required the State to make such a challenge by an earlier date.  Reiner's claim of error goes nowhere because even if the court did err by considering this challenge, any such error was harmless because the court allowed Reiner's expert to testify.

¶16     Further related to Reiner's expert, Reiner claims the circuit court erred by "allowing the State to make foundational objections and allow objections the State believes exceeds the [expert] witness's area of expertise."  He adds that "[d]ue to numerous objections sustained by the [c]ourt and numerous sidebars called by the [c]ourt, the expert could not testify in detail" regarding numerous matters Reiner specifically references in his brief.  We reject this challenge as Reiner has failed to include a complete trial transcript providing support for his claims of error.  Because of this failure, we have no record of the "numerous objections" by the State, what testimony the expert may have been prevented from providing, or the reasons the circuit court sustained the State's objections.  Indeed, we cannot even confirm if Reiner's representations regarding what the State and court did or did not do is accurately represented in his brief.

---

[3] Reiner's position that the arresting officer did not have probable cause to administer a PBT to him or subsequently arrest him is founded in part upon his contention that the officer himself was "impaired with sleep deprivation" because, according to Reiner, the officer indicated in one of the traffic stop videos that he "only got like 4 hours of sleep, from like 10:00 to 2:30."  This contention goes nowhere for the simple reason that Reiner fails to develop any argument based upon the law or the facts of record that the officer's ability to perform his duties during the traffic stop was at all compromised by his alleged lack of sleep.

¶17    As we have stated, "It is the appellant's responsibility to ensure completion of the appellate record and 'when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the [circuit] court's ruling.'" *State v. McAttee*, 2001 WI App 262, ¶5 n.1, 248 Wis. 2d 865, 637 N.W.2d 774 (citation omitted); *see also Jocius v. Jocius*, 218 Wis. 2d 103, 119, 580 N.W.2d 708 (Ct. App. 1998) (declining to address whether the circuit court erred in denying appellant physical placement rights "because in order to determine whether the [circuit] court erroneously exercised its discretion with respect to this issue, we must be able to examine a full transcript of the proceedings.  [Appellant], however, has failed to provide us with the transcript.").  Furthermore, on appeal "it is the burden of the appellant to demonstrate that the [circuit] court erred."  *Seltrecht v. Bremer*, 214 Wis. 2d 110, 125, 571 N.W.2d 686 (Ct. App. 1997).  Without critical record support for his arguments, Reiner cannot meet this burden.

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5 (2021-22).